MILTON HART, Appellant, v. JOHN G. HELLMAN Co., INC., et al., Respondents.

First Department, December 11, 1962.

*Samuel Kalmanash* for appellant.

*Samuel Lawrence Brennglass* for respondents.

McNALLY, J. In an action on two contracts plaintiff appeals from the judgment entered April 12, 1962 insofar as it dismisses the complaint on the merits at the close of the evidence and before submission to the jury.

The individual defendant was engaged in the electrical contracting business under the name and style of John G. Hellman Co. until on or about January 1, 1948; thereafter the business was conducted by defendant John G. Hellman Co., Inc. Plaintiff was vice-president of the corporation.

The basic employment contracts are respectively dated April 3, 1946 and December 19, 1953. The 1946 contract employs plaintiff to solicit, estimate and supervise private electrical work for a period of three months ending July 2, 1946. Thereby plaintiff is required to devote his entire attention to his employer's business. The compensation provided for plaintiff's services is 50% of the net profits realized and earned by his employer from private electrical work solicited solely by plaintiff against which the employer is required to advance the weekly sum of $100. Said contract also provides as follows: '' Adjustment and payment by the employer to the employee of his share of the net profits shall be made at the end of the three month period of this agreement and thereafter at the end of each renewal three month period of this agreement, as hereinafter set forth. That the employer shall prepare a statement of receipts and disbursements on and for each contract for work, so solicited by the employee, and show the net profits thereof and the moneys payable to the employee based upon the said net profits less the advances made by the employer to the employee, as hereinafter provided for, shall be paid within one calendar month after the employer receives payment from the persons, firms or corporations for whom such work has been performed and in which the employee is entitled to share, as shown on the said statement. That the said statement prepared, as aforesaid shall be accepted by the employee, as evidence of the amount of the net profits in which he is to share. If however, the employee disputes the amount of such net profits, he shall have the right within thirty (30) days after the receipt by him of the employer's statement, as aforesaid, to examine the employer's books and accounts for the purpose of verifying the said statement. Such examination shall take place at the principal office of the employer within thirty (30) days after the receipt of the said statement by the employee. Unless the employee makes such examination within the said thirty (30) day period, the statement of the employer shall be conclusively deemed correct and acceptable and the employee shall have no further claim against the employer for the period covered in such statement. If the employee does make such examination within the said thirty (30) day period, he shall within a period of thirty (30) days after making such examination notify the employer in writing and by registered mail of

any dispute or errors that he finds in the said statement and upon the employee's failure so to do, it shall be deemed that the employee has found the statement correct in all respects and such statement shall be conclusively deemed correct and acceptable by the employee and he shall have no further claim against the employer for the period covered in such statement."

The 1953 contract is for a period of two years commencing January 1, 1953. The same compensation is provided except that the weekly advances are increased to $200; and a formula expressed for the computation of net profits. The provision for the rendition of statements to the plaintiff is retained except that they are to be furnished semiannually instead of quarterly. In addition, the 1953 contract (art. first) provides as follows:

" (a) The employer and employee agree that the employment agreement heretofore entered into between them dated April 3rd, 1946, shall be deemed to have continued and remained in full force and effect up to the end of December 31st, 1952 and that the said contract shall terminate and come to an end as of the end of December 31st, 1952.

" (b) The employee acknowledges and concedes that the employer furnished him with statements of receipts and disbursements as provided for in Article 4 of the said agreement dated April 3rd, 1946, for the entire period of the said employment up to the end of December 31st, 1952 and that the employee accepts all of the said statements and the accounting made up to the end of December 31st, 1952, as true and correct and acceptable to the employee and that the employee has no further claims of any kind whatsoever against the employer for the entire period of his employment ending December 31st, 1952."

The complaint demands judgment in the sum of $125,000. On the trial the *ad dammum* clause was increased to $141,632.84. Plaintiff's amended bill of particulars itemizes the damages sought as follows: (1) Mount Sinai Hospital job No. 078, $103,883.92; (2) additional Mount Sinai Hospital work, $3,068.45; (3) Heating Maintenance Corp. job No. 169, $1,629.97, and costs not incurred and wrongfully attributed to the job, $2,704.48 — total $4,334.45; (4) additional work for Heating Maintenance Corp., $201.58; (5) telephone, auto, estimating and sundry expenses improperly charged to plaintiff, $1,481.68; (6) payroll taxes improperly charged to plaintiff, $1,018.80; (7) overhead improperly charged to plaintiff, $14,925.26; and (8) balance due in accordance with statement September 3, 1957, $12,718.70. The total of the foregoing is $141,632.84.

Plaintiff was awarded the sum of $3,902.74 on item eight of the amended bill and plaintiff on this appeal does not seek to

sustain the balance thereof. This appeal therefore involves claims of the plaintiff aggregating $128,914.14.

Plaintiff was furnished statements for the periods ending as follows: June 30, 1947; December 31, 1947; March 31, 1948; December 31, 1948; December 31, 1949; June 30, 1950; December 31, 1950; and June 30, 1951. The 1946 contract provides for quarterly statements. Instead statements were furnished to plaintiff more or less semiannually without objection.

The statement for the period ending December 31, 1951 was delivered to plaintiff on March 12, 1952. By letter dated April 10, 1952 plaintiff disputed the said statement. Plaintiff specifically objected to overhead and expenses reflected in said statement in the sum of $21,019.62 and asserted that a 20% labor charge of $21,626.40 was excessive. Plaintiff also complained of the omission of an item of $1,036 for cash expenses advanced by him for the period ending December 31, 1951.

Subsequent to April 10, 1952 the relationship between the parties became strained to the point that on September 16, 1952 the corporate defendant, in writing, terminated plaintiff's employment effective October 2, 1952. Nevertheless, plaintiff continued in the corporate defendant's employ until the execution of the agreement dated December 19, 1953. The latter agreement revives the 1946 agreement to December 31, 1952 and provides for a new period of employment commencing January 1, 1953.

Prior to plaintiff's letter of April 10, 1952 and by letter dated September 26, 1951, the corporate defendant was invited to bid on electrical work for Mount Sinai Hospital. Plaintiff prepared the estimates and negotiated the contract for said work. On March 12, 1952 Mount Sinai Hospital approved the corporate defendant's bid for said work in the sum of $333,888, subject to the execution of a formal contract. The work involved the completion of Atran Laboratory, the creation of cardiology and central locker rooms and the rehabilitation of the hospital's private pavilion.

Work was commenced on the Mount Sinai project on or about March 12, 1952. By January 15, 1953 the completed work thereon was valued at $305,914.21 and by August 31, 1953 the value of the work performed was $485,131. By the end of October, 1953 the corporate defendant had received payments from the hospital aggregating $450,000. Plaintiff was during the periods aforesaid engaged in the supervision of the Mount Sinai work and also shared the supervision of the corporate defendant's office work and employees. As already noted plaintiff was a vice-president of the corporate defendant.

Contemporaneously with the execution of the 1953 agreement plaintiff received a statement of accounts receivable pertaining to his accounts as of December 31, 1952, annexed to which was a schedule of jobs and costs described by job number and location. Statements previously rendered to plaintiff included a summary statement containing a computation of net profits. The statement for the period ending December 31, 1952 does not contain a summary computation of net profits; it does, however, set forth plaintiff's accounts receivable by job number and a statement of billings and costs itemized as to both job number and location.

The 1953 agreement reviving the 1946 employment and terminating it as of the end of 1952 includes plaintiff's acknowledgment that he has been furnished with statements of receipts and disbursements in accordance with the 1946 agreement for the entire period of said employment until December 31, 1952, and his certification that the said statements are true and correct and that he "has no further claims of any kind whatsoever against the employer for the entire period of his employment ending December 31st, 1952."

The Mount Sinai job referred to and described as job No. 078 is not reflected in the statement for the period ending December 31, 1952. Prior thereto there had been substantial performance, billings to and receipts from Mount Sinai Hospital with respect to this contract which on this record beyond cavil were within the knowledge of plaintiff.

Although it may be that the differences between the parties originally derived from plaintiff's written protest of April 10, 1952 pertaining to labor, overhead charges and other items, it appears the contract of December 19, 1953 reflects a review of their relationship prior thereto. Moreover, both contracts provide for written notification of disputes relative to statements furnished the plaintiff and proscribe modification unless in writing. The requirement of written modification is emphasized by the contemporaneous execution of two documents respectively dated December 19, 1953 which grant plaintiff permission to estimate and submit bids for electrical work on specifically described public jobs. The said grants are modifications and enlargements of article fifth of the 1953 agreement whereby plaintiff's compensation is limited to 50% of the net profits realized from private electrical work solicited by plaintiff as distinguished from public jobs.

Subsequent to December 19, 1953 plaintiff received from defendant corporation statements for the periods ending as follows: December 31, 1953; June 30, 1954; December 31, 1954;

June 30, 1955; December 31, 1955; and December 31, 1956. Each statement includes a commission statement containing a computation of net profits, a schedule of accounts receivable particularized as to job number and location and a schedule of job costs similarly particularized, all related to and described as the accounts of the plaintiff. None of the statements reflected job No. 078.

On September 29, 1954 plaintiff, in writing, notified the corporate defendant of his intention not to renew the agreement expiring December 31, 1954. Thereafter in response to the statements for the periods ending December 31, 1954, June 30, 1955 and December 31, 1955, plaintiff requested and was granted examinations of said defendant's books.

Prior to his request for the examination of the corporate defendant's books in regard to the statement of December 31, 1955, plaintiff was in consultation with his attorney. Plaintiff made no written objections to the statements rendered him until July 20, 1956 when he protested the omission to credit him with the net profits of jobs Nos. 100, 107 and 078, the last being the job involving Mount Sinai Hospital. The alleged omission to credit plaintiff for net profits on jobs Nos. 100 and 107 is not urged on this appeal. Plaintiff then objected to being charged with insurance costs, the failure to credit him with inventories at the completion of various jobs and excessive costs as to job No. 169 (item three of amended bill of particulars). Plaintiff's testimony, however, is that he orally protested the omission of job No. 078 after receipt of the statement for the period ending December 31, 1953 and again after the statement for the period ending June 30, 1954.

On the trial and on this appeal plaintiff attributes his termination of the employment to the omission to furnish statements acknowledging his right to profits in respect of job No. 078. His notice of termination, however, fails to ascribe this or any other ground therefor. On the other hand, it abundantly appears from the record that by agreement dated September 23, 1954, six days before the date of the notice of termination, plaintiff entered into an agreement with Plymouth Construction Company for his employment as manager for a period commencing January 1, 1955 at an annual salary of $20,000 with provision for payment of 50% of net profits and an option to purchase 49% of the stock.

Despite termination of his employment effective January 1, 1955, plaintiff did not thereafter specifically object to any omission or error in the statements furnished to him until July 20, 1956. The statements rendered to plaintiff subsequently were in accordance with the agreement of December 19, 1953. Plain-

tiff, however, did not within the time limit of 30 days after the examination of the corporate defendant's books notify said defendant, in writing, of any dispute or errors except as to item three of the amended bill of particulars relative to job No. 169, reflected in the statement of the corporate defendant as of December 31, 1955. Plaintiff's letter of July 20, 1956, following the examination of the corporate defendant's books in connection with its commission statement of December 31, 1955, specifically protests as excessive and arbitrary the costs charged against job No. 169.

Item four of the amended bill of particulars reflects transactions antedating December 19, 1952 and the facts are essentially the same as in the case of job No. 078. Items five to seven, inclusive, of said bill pertain to years for which statements were furnished and as to which plaintiff failed to object orally or in writing prior to this action.

The practical construction of the basic contracts by the parties is to be given great weight and consideration. (*Brooklyn Public Library* v. *City of New York*, 250 N. Y. 495, 501; *Sattler* v. *Hallock*, 160 N. Y. 291, 301; *Woolsey* v. *Funke*, 121 N. Y. 87, 92; *Sinkwich* v. *Drew & Co.*, 9 A D 2d 42, 44; *Pease & Elliman* v. *Weissman*, 4 A D 2d 936; *Matter of Mencher* [*Geller & Sons*], 276 App. Div. 556, 565; *Halperin* v. *McCrory Stores Corp.*, 207 App. Div. 448, 451, affd. 239 N. Y. 547.)

We conclude that the provisions of article IV of the agreement of 1946 and article first of the agreement of 1953 in the light of the facts and circumstances antedating the last agreement, the provisions of article fifth of the 1953 agreement, the statements thereafter furnished to plaintiff to and including June 30, 1955, and the plaintiff's omission prior to this action to object in writing as in said agreements provided constitute an account stated as to job No. 078. We also conclude that the statements furnished to the plaintiff subsequent to the 1953 agreement for the periods covered by items five to seven, inclusive, and his failure prior to this action specifically to object thereto orally or in writing as in said agreement provided constitutes an account stated as to said items.

The record demonstrates accounts stated as to all items set forth in plaintiff's amended bill of particulars except item three. (*Corr* v. *Hoffman*, 256 N. Y. 254, 266; *Rodkinson* v. *Haecker*, 248 N. Y. 480, 485; *Sprague* v. *Currie*, 133 App. Div. 18.) The accounts stated herein between the parties are conclusive as to the jobs listed and not listed in the statements furnished the plaintiff, absent fraud, mistake or other equitable considerations not reflected on this record. (*Sea Modes* v. *Cohen*, 309 N. Y. 1.)

We are also of the opinion that the release provision of the 1953 contract (art. first, subd. [b]), which resulted from negotiations over an extended period of time during which plaintiff was represented by an attorney, bars plaintiff's claims for the entire period of his employment ending December 31, 1952, inclusive of items one, two and four of the amended bill of particulars. (*Lucio* v. *Curran*, 2 N Y 2d 157 and cases cited therein.)

Since there appear to be issues of fact as to item three of the amended bill of particulars as heretofore indicated, the judgment should be modified, on the law and on the facts, to the extent of severing the complaint as to said item and ordering a new trial thereon against the corporate defendant, and, as so modified, affirmed, with costs to abide the event.

BERGAN, J. (dissenting). Plaintiff and defendants entered into two written agreements to share net profits realized by defendants in their business as electrical contractors on jobs solicited by plaintiff. One agreement was dated April 3, 1946; its successor was dated December 19, 1953.

Substantial sums were paid by defendants to plaintiff pursuant to this arrangement. This litigation arises over a job at Mt. Sinai Hospital, contract No. 078, awarded to defendant on March 12, 1952 while the first agreement was operative; substantially carried on and completed July 8, 1954 during the term of the second agreement.

Plaintiff offered proof by his own testimony, corroborated in part by witnesses who had acted for the hospital, that he solicited for defendants the award of contract No. 078 and suggested modifications of the bid and other adjustments facilitating the ultimate award to defendants. For example, George M. Lindsey, an engineer employed by the firm supervising construction plans for the hospital, testified that the only contact he had with defendants " either prior to the award, or after the award " was through plaintiff.

Indeed, defendants offered no proof that they had solicited or obtained the contract with the hospital; and they relied on the course of entries in their own books of account to prove that this contract was not one which came within plaintiff's profit-sharing agreement.

The court at the end of the trial refused to send the case to the jury and dismissed the complaint. This kind of a question of fact could not be resolved by an order of dismissal; and on settled principles of law plaintiff was entitled to go to the jury on the question whether he had obtained the job for defendants

in pursuance of the contract; or whether they had obtained it without plaintiff's help.

The main difference of opinion in this court is concerned with the question whether there has been an account stated between the parties which had become conclusive against plaintiff's claim for a share of contract No. 078. If this part of the case is considered from the aspect of the proof most favorable to plaintiff's claim, as it must be in determining whether the complaint may be dismissed as a matter of law, it will be seen from the contract and the course of dealings between the parties that an account stated is not made out conclusively and that the determination of this issue turns upon questions of fact.

The agreement of April 3, 1946 provided for the payment to plaintiff of 50% of '' the net profits realized and earned '' by defendant Hellman Corporation from the work solicited by plaintiff; and that '' adjustment and payment '' should be made in three-month periods on the basis of statements by defendants showing receipts, disbursements and '' net profits ''. It was agreed that the statements should be accepted by plaintiff '' as evidence of the amount of the net profits in which he is to share '' unless he disputed the '' amount of such net profits '', in which case he might examine the books and notify the defendants in writing of any error or dispute. If these steps were not taken successively each in 30 days, the agreement provided that '' it shall be deemed that the employee has found the statement correct '' and '' such statement shall be conclusively deemed correct and acceptable '' by the plaintiff and '' he shall have no further claim against the employer ''.

Whatever this kind of language may connote as a waiver of future rights if the prescribed procedure were not followed, the failure to follow it does not necessarily under the facts of this record spell out an account stated within familiar principles of law. The account with which these parties were concerned was the '' net profits '' on the contracts at issue. The contract expressly provided that the statements were to be treated as '' evidence '' of the '' net profits ''.

When jobs were completed and paid for within the period embraced by the statement its application and effect can readily be seen. But it is clear that '' net profits '' would not ordinarily be determinable in a construction job until the work was all done and all the payments and disbursements completed. Defendants' accountant, as a witness in the case, conceded this; and it is the common understanding of '' net profits ''.

The second and superseding agreement of December 19, 1953 was more specific about this. '' Net profits '', it provided, shall

be deemed to be " Sales, less labor and material costs, and expenses directly applicable and allocatable to the job including payroll taxes, labor assessments and insurance plus a sum equal to 8% of the aforesaid described deductible items." It is not easy to see how a statement of " net profits " within this definition could be given before all the constituent items were known and computed.

Thus, until job No. 078 was completed and paid for the " net " profit earned by defendants could not be ascertained. The last item of labor on job No. 078 was performed July 8, 1954 and a final requisition for payment was made September 30, 1954.

The parties in dealing with other jobs prepared and accepted statements which seem on their face to have run currently with the jobs and apparently did not show ultimate net profits. But the effect of this is a matter for evaluation by the jury as a practical interpretation of what was intended to be in the statements.

The omission of reference to job No. 078 from statements before that job was finished could have slight effect upon the plaintiff as an account stated when the facts are looked at closely; and certainly does not amount to a conclusive bar to plaintiff's recovery. The first statement that plaintiff received after March 12, 1952, the date on which job No. 078 was obtained, was for a period ending December 31, 1953; but this was not received until March or April, 1954, two years after the job was secured.

There is proof that plaintiff promptly protested the omission of job No. 078 from that account and that defendant Theodore A. Hellman told him that he would have it added " on to the next statement ". If this were accepted as true by the jury it would amount to an acceptance by defendant of plaintiff's protest and an agreement to correct it, even though normally " net profits " would not be computable at that stage of the work.

The next succeeding statement, due June 30, 1954 was not transmitted until September 20, 1954. This made no reference to job No. 078. Within 30 days, October 19, 1954, plaintiff protested in writing the insufficiency of the statement furnished September 20, 1954; noted that it did not conform to the contract and stated that plaintiff had discussed " such omissions " with Mr. Hertzberg. The statement of December 31, 1954 was not received until March 15, 1955, and was disputed by plaintiff in a letter to defendants of March 18, 1955; and similar written dissents were made from the statements of June 30, 1955, received August 4, 1955, disputed in writing September 1, 1955; of December 31, 1955, received May 26, 1956, disputed June 19, 1956; and of December 31, 1956, received March 14, 1957, and

disputed April 8, 1957. It is very difficult to spell out an account stated as a matter of law for " net profits " in all this; and the question ought to have been determined as one of fact.

The court in dismissing the action also held that the provision of the second agreement of December 19, 1953 which contained the provision that plaintiff " has no further claims of any kind whatsover " against defendants " for the entire period of his employment ending December 31st, 1952 " constituted a release barring this cause of action.

But it is clear in the record that the acknowledgment of the nonexistence of " further claims " had nothing to do with job No. 078; and related to something entirely different. Further than this, a substantial part of plaintiff's claim arose from performance of contract No. 078 long after December 31, 1952 and thus was beyond the period stated in the agreement of December 19, 1953.

The merits of this litigation were for the jury and not the court; the judgment should be reversed and a new trial granted.

BREITEL, J. P., and VALENTE, J., concur with McNALLY, J.; BERGAN, J., dissents in opinion in which STEVENS, J., concurs.

Judgment, so far as appealed from, modified, on the law and on the facts, to the extent of severing the complaint as to item three of the amended bill of particulars and ordering a new trial thereon against the corporate defendant, and, as so modified, affirmed, with costs to abide the event.