█ MISTER FILTERS, INC., Respondent, v. WEBER ENVIRONMENTAL SYSTEMS, a, Division of Walter Kidde and Company, Inc., Appellant, et al., Defendant.— Appeal from a judgment of the Supreme Court in favor of plaintiff, entered September 8, 1972 in Albany County, upon a decision of the court at a Trial Term, without a jury. Appellant, Weber Environmental Systems, is a manufacturer and installer of clean rooms and filtration systems that keep such rooms free of air pollutants. Respondent, Mister Filters, Inc., is an installer of clean rooms and filtration systems. On July 25, 1969, respondent entered into a contract whereby respondent became an agent of appellant for the distribution and installation of its products. The contract provided for a specific territory wherein respondent was to make its sales and was on a form prepared by appellant. The contract provided that it could be terminated on a breach by either party upon 30 days' notice of termination. On December 8, 1970, appellant mailed a notice of termination to respondent alleging a failure to pay for all products invoiced within 30 days of the invoice date as provided by the agreement. In the fall of 1970, appellant submitted a bid for the installation of a clean room at the Xerox plant in Rochester, New York, which was within the territory allotted to respondent, and had also solicited contracts from others within the territory assigned to respondent. Defendant, Frank Flynn, had been employed by respondent from November, 1967 until August 10, 1970 when he became employed by appellant. In the month of December, 1970, respondent commenced this action to enjoin appellant and Flynn from soliciting business or accepting orders other than from respondent within its dealership area, from submitting a bid to Xerox Corporation in Rochester, New York, and for damages alleging that the agreement between respondent and appellant constituted respondent as the exclusive representative and distributor for appellant in the territory specified in the agreement which included the State of New York. The written contract, however, did not state that respondent had the exclusive right to represent appellant within the specified territory. At the trial, respondent's president and the founder of the appellant were permitted to testify as to oral representations of the exclusive nature of the contract. The trial court determined that the contract granted an exclusive territory to respondent; that appellant had breached the contract by making direct sales within the territory specified in the contract; and that respondent

was entitled to damages in the amount of $39,691.81. Appellant contends that the court erred in finding that the contract was an exclusive contract in the prescribed territory; in allowing oral testimony as to the exclusiveness of the contract; in refusing to allow appellant to introduce into evidence other contracts which were nonexclusive by their terms; and in computing the amount of damages. The language of the contract is uncertain and ambiguous as to whether the specified sales territory is an exclusive territory in which only respondent may sell appellant's products. It is also uncertain and ambiguous as to whether respondent's right to sell is to be limited solely to the indicated territory. While the parol evidence rule excludes all prior and contemporaneous oral agreements when such evidence is offered to vary the terms of an apparently complete written contract, the rule is otherwise where the meaning of the contract is not clear. In such cases "'the situation of the parties and the surrounding circumstances at the time of the making of the contract are to be taken into consideration.'" (*Germaine* v. *Safeguard Ins. Co.*, 7 A D 2d 830.) Here, the combination of an assigned territory and the failure to specify whether or not it was an exclusive territory render the meaning of the contract unclear and ambiguous. The trial court properly permitted oral testimony of the facts and circumstances surrounding the making of the contract including the prior oral agreements between the parties, and of the representations made by the representatives of appellant to respondent for the purpose of arriving at the meaning of the terms of the agreement. The record indicates that the testimony of both respondent's president and appellant's founder was to the effect that respondent would have an exclusive right to sell appellant's products. In addition, it was established that the custom in the industry was that no manufacturer's representative would work in this particular area unless he had an exclusive right to sell the product. The trial court properly found that respondent had the exclusive right to represent appellant in the designated territory. Appellant also contends that the damages should have been limited to the commissions respondent would have earned on the sales, less the expenses respondent would have incurred in performing its part of the contract. The contract provided two methods for computing commissions. If respondent voluntarily awarded a contract for a complete (turnkey) contract, its commission was 7%. If it ordered only the manufactured components from appellant, it would receive a commission in the amount of the normal discounts on the published list prices. The evidence on damages consisted of the amount of the sales made by appellant in the territory allotted to respondent. Except for the sale to Xerox, all the sales were of components to which the normal discounts on the published list prices were applicable. On the Xerox sale, which appellant contracted on the basis of a complete (turnkey) contract, respondent could have chosen to construct the room itself rather than to award the contract to appellant, and in such case order the component parts from appellant, thereby obtaining the normal discount instead of a 7% commission. Damages could thus properly be computed on the basis of component sales on all of the sales involved in the action. Appellant's contention that there was no evidence offered as to what respondent's expenses would have been in obtaining these sales is immaterial. The contract specifically provides that, should a contract for components be awarded by the ultimate user directly to appellant, the respondent's commission would be the amount of the normal discount on the published prices. This difference in price was the proper measure of damages. Appellant's final contention is that the court erred in refusing to allow appellant to introduce into evidence contracts which it had with other agents. These contracts were stated to be nonexclusive by their terms and, as

such, had no bearing on the meaning of the contract between the parties. Judgment affirmed, with costs. Herlihy, P. J., Staley, Jr., Cooke, Sweeney and Kane, JJ., concur.