**J. B. LIPPINCOTT COMPANY, Plaintiff,**

v.

**Eric LASHER, Defendant.**

**No. 73 Civ. 915.**

United States District Court,
S. D. New York.

March 28, 1977.

---

Weil, Gotshal & Manges, New York City, for plaintiff, Pepper, Hamilton & Scheetz, Philadelphia, Pa., by Peter Hearn, Philadelphia, Pa., of counsel.

Matthew Lilling, New York City, for defendant.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

This is an action based on diversity of citizenship. The plaintiff is a Philadelphia book publisher; the defendant was a resident of New York, New York, at the time of the institution of the action and is now a resident of California. The suit alleges a breach of a publishing contract. Plaintiff seeks to recoup certain monies advanced to the defendant in anticipation of defendant's authoring a book called "The Last Jew In Berlin." This opinion constitutes findings of fact and conclusions of law, as required by Rule 52, Fed.R.Civ.P.

It is clear that the plaintiff corporation entered into an agreement with the defendant author, Eric Lasher, providing that Lasher would research and write a book dealing with that handful of Berlin's Jews who survived the perils of the Nazi regime. The agreement provided that Lasher would deliver a completed book length manuscript, satisfactory to Lippincott, and ready for publication on or before January 31, 1969. The deadline under this agreement could be extended by the plaintiff in its discretion.

Lippincott also received exclusive world rights to said book for the duration of the original and renewal copyright terms. In return, Lippincott agreed to copyright the work in Lasher's name, to publish, distribute and sell the book, and to pay certain royalties to Lasher. Lippincott also agreed to make certain cash advances against Lasher's prospective royalties. These advances were obviously made in order to enable the defendant to research the book. On August 17, 1967, Lippincott paid Lasher Ten Thousand Dollars ($10,000) as an advance against Lasher's future earnings under the agreement.

In February 1968, Lasher, still in Europe, represented to Lippincott that he was making progress on the book and requested an additional advance of $5,000. Although the agreement provided for the payment of an additional $5,000 advance only upon the delivery of a portion of the manuscript evidencing to Lippincott satisfactory progress in the writing of the book, Lippincott, relying upon Lasher's representations, waived this condition and paid this amount to Lasher on February 28, 1968.

Sometime in October 1968, Lasher informed Lippincott that he would be returning to New York the following month with a completed manuscript of the book. In November 1968, Lasher requested an additional $3,000 advance, which amount Lippincott also paid, apparently upon the defendant's representation of an appropriate delivery of the manuscript. During the same period, Lippincott purchased and sent to Lasher, at his request, certain books from other publishers, the cost of which, plus postage, totalled $83.62.

It cannot be denied that the defendant Lasher did not deliver a book-length manuscript to the plaintiff publishing company. At best, he wrote a first chapter. Eventually, he provided certain tape recordings and related transcripts of conversations with Jewish survivors of the Berlin "holocaust." The original contract provided that the manuscript would be "satisfactory to the publisher in content and form, in length of approximately 80,000 words, complete and ready for the printer," and furthermore, that it was to be delivered to the publisher on or before January 31, 1969. No such manuscript was delivered to the publisher at the time.

Apparently Lippincott was intrigued with the subject matter of the proposed work and consented to the delays requested by Lasher. However, in the spring and summer of 1971, the publisher made a number of repeated demands that Lasher return monies advanced to him. The monies were not returned and in September 1971, an oral agreement was reached between the publisher extending the deadline for delivery of the completed work and deferring legal action in exchange for Lasher's promise to meet a revised delivery schedule. Lasher did not meet this revised schedule. At this point a renewed demand was made for repayment of the advances made to Lasher. No repayment of advances was ever made.

Sometime in early January 1972, Lippincott once again agreed to an extension of the deadline and Lasher agreed to meet the new deadline for the delivery of the book. Lasher also agreed to hire at his own expense a collaborating writer to complete the work. The new deadline was set for September 1, 1972. Lasher failed to meet the new deadline and did not hire a collaborator to work on the promised manuscript of the book.

■ In this action, the plaintiff seeks to recoup not only advances made to the defendant but also the potential profit that might have been made had the original agreement been adhered to. I find the claim for future profits to be without merit. It is almost impossible to compute what profit would have been made by the publisher if the defendant had, in fact, completed the work and the publisher had properly promoted and published the book. This claim for damages is by far too speculative to be ruled upon and it is entirely rejected. *See Cramer v. Grand Rapids Show Case Co.,* 223 N.Y. 63, 119 N.E. 227 (1918); *Perma Research & Development Co. v. Singer Co.,* D.C.N.Y., 402 F.Supp. 881, 898–902, *aff'd* 542 F.2d 111 (2d Cir. 1976).

There remains the question of whether the plaintiff should be able to recoup the advances made to the defendant in connection with the proposed work. On this issue there is an intriguing interpretation of the contract advanced by the defendant. Summarizing the argument, it is asserted that except for sub-paragraph 1, there is no provision in the written contract which obligates the defendant to repay advances. Sub-paragraph 1 permits the recovery of advances if, upon the termination of the agreement, any rights to the work, or any portion thereof, are sold, or contracted for sale to any third party by the defendant. The defendant contends that since no such sale was made or contracted for, sub-paragraph 1 is inapplicable.

■ In effect, the defendant claims that his nonperformance of the contract does not entitle the plaintiff to recoup its advances. I disagree. It is true that a written contract prepared by a publisher will be strictly construed in recognition of the publisher's greater bargaining power. In fact, publishers often enforce their will upon unsuspecting artists. However, this does not

mean that a complete breach and disregard of the contract by an artist should unjustly enrich him at the expense of the publisher.

Plaintiff is directed to settle a judgment on notice for the full amount of the advances, plus the $83.62 in expenses, together with interest from September 1, 1972 and court costs.