VILLAGE SAVINGS BANK, Respondent, v MARIA B. CAPLAN et al., Appellants.

Second Department, June 7, 1982

APPEARANCES OF COUNSEL

*Public Citizen Litigation Group (Alan B. Morrison* of counsel) and *Golenbock & Barrell (Michael C. Silberberg* and *Geri S. Krauss* of counsel), for appellants (one brief).

*Taylor, McCullough, Geoghegan & Friedman (James Staudt* of counsel), for respondent.

*Leopold S. Rassnick* for Savings Banks Association of New York State, *amicus curiae.*

OPINION OF THE COURT

LAZER, J.

The issue in this mortgage foreclosure action is the mortgagee's right to establish a "fully accrued" system of collecting tax escrow payments under which either the required tax reserve or the monthly escrow payments — or both — may be well in excess of the sums required under a system keyed to the monthly collection of one twelfth of the

annual real estate taxes. On the facts before us, we believe that Special Term's grant of summary judgment of foreclosure was error and that a trial is necessary.

In May, 1973, Maria and David Caplan financed the purchase of a home in Briarcliff Manor by borrowing $60,000 from the Village Savings Bank. Paragraph 16 of the resulting mortgage provided: "In addition to the above payments, the Mortgagor, or any subsequent owner of the premises herein described, shall pay to the Mortgagee on the first day of each month until the whole of the principal and interest is fully paid one-twelfth of the annual taxes, water rates, sewer rates and special assessments, all as estimated by the Mortgagee and full irrevocable authority is hereby given to the Mortgagee to pay the same. If the amounts paid by the Mortgagor are insufficient to pay for all the aforesaid items, the Mortgagor agrees to pay the deficiency on demand; and failure to pay any deficiency within thirty (30) days of such demand shall constitute a default under this Mortgage."

A truth in lending statement signed by the Caplans at the time of execution of their loan commitment stated that "[i]n addition to the regular monthly payment for principal and interest, an additional payment equal to 1/12th of the estimated annual taxes will be required." However, another paper signed by Mrs. Caplan at the mortgage closing set forth the estimated tax reserve required to start the tax escrow account as follows:

"ESTIMATED TAX RESERVE

| "Town Tax | 3 | Months | $ 135.00 |
|-----------|---|--------|----------|
| "School Tax | 6 | Months | $ 786.00 |
| "Village Tax | 7 | Months | $ 336.00 |
| "TO START TAX RESERVE ACCOUNT | | | $ 1257.00" |

The same document also estimated the total taxes for the year 1973 at $2,688 and declared: "Note: Monthly payment required for taxes may vary from time to time. The foregoing is an estimate." The statement fixed the monthly payments at $224.92, or 92 more than one twelfth of the estimated annual taxes. The Caplans complied with the statement by depositing a sum of $1,257 in the tax reserve account at the closing.

In March, 1978, the bank requested that the Caplans increase their monthly tax payments to $485.92. By that time, the Caplans were paying $350.92 monthly, a sum which represented approximately one twelfth of the annual tax bill, and they continued to tender the same sum. In a letter to the Caplans dated September 17, 1978, the bank noted that it had been accepting that amount for the past two years. In June, 1979, the Caplans sent the bank an extra payment of $220, representing the difference between the 1978 and 1979 tax bills. Either in September or November, 1978, the bank began returning the Caplans' checks as insufficient and ultimately commenced this foreclosure action for failure to comply with the tax escrow paragraph. Special Term granted the bank's motion for summary judgment and the Caplans have appealed.

In its affidavits in support of the motion, the bank declared that it utilized a "fully accrued" system in estimating tax payment requirements. A bank officer explained the system as follows: " 'Fully accrued' simply means that at any given time, with respect to each of the various tax payments, the account balance is such that if you add to it the monthly escrow payments which the customer will make between that given time and the date each of the various taxes will come due in the future, the sum will be sufficient to pay those taxes."

Under the system thus established, the bank created five separate accounts — one for each payment due to the tax authorities. Where a specific tax was payable to the tax receiver in two installments, a separate account was created for each installment. Payment of any specific tax installment from the account established for it left untouched the sums available for tax payments in the other accounts. Thus, for example, the June installment of village taxes would be paid solely from the account established for the June installment, despite the fact that five or six months worth of deposits might at that time be at hand in the December village tax account, as well as various sums in the school and town tax accounts. The Caplans contend that under such a system, the total amount in escrow or the amount of the monthly escrow payments will always exceed the amounts required under a single ac-

count system keyed to monthly payments of one twelfth of the taxes.

The Caplans illustrate this by pointing out that the bank demanded $485.92 monthly in March, 1978 to defray total taxes of $4,180.27 for the coming year, a sum which could be payable in 12 monthly installments of $348.35. Tables submitted by the Caplans in opposition to the summary judgment motion indicate that the bank's system of collection would have resulted in 1978 tax reserve balances ranging from $389 to $2,394 and 1979 balances of from $1,899 to $3,021, while a single account system based on monthly deposits of one twelfth of the annual taxes would have produced reserve totals of between $74 and $1,161 for 1978 and $73 to $1,198 in 1979. While part of the bank's increased escrow demands may be attributable to the $505 shortfall in its tax reserve, based on tax increases after the original $1,257 deposit, what actually took place between the parties is unclear from the papers. It is apparent, however, that under a fully accrued system the average tax reserve balances or the monthly escrow payments, and perhaps both, exceed those required under a single account setup.

The bank argues, however, that its fully accrued system is consonant with the mortgage terms, the method is necessary since the taxes fall due in different amounts at odd intervals during the year, the Caplans consented to it when signing the closing statement, and the Caplans' conduct subsequent to the making of the mortgage until their default constituted acquiescence in the system. The Caplans reply that the mortgage terms, the tax reserve statement, and the truth in lending statement do not set forth any system for computing the tax escrow account and both the mortgage and the truth in lending statement only require monthly payments of one twelfth of the estimated taxes. They also insist they did not acquiesce in the fully accrued system and that the use of separate accounts for each tax installment unnecessarily inflates their monthly payments to the advantage of the bank.

Resolution of this appeal depends "on what rights and obligations the parties are found to have intended to create as manifested by the words they used in their written

agreement, with parol evidence admissible to clarify ambiguities, if any, under recognized canons of construction" (*Matter of Surrey Strathmore Corp. v Dollar Sav. Bank of N. Y.*, 36 NY2d 173, 176). If a contract is clear and unambiguous, it is the responsibility of the court to interpret its provisions (*Teitelbaum Holdings v Gold*, 48 NY2d 51; 4 Williston, Contracts [3d ed], § 601). But, if there is ambiguity in the terminology used and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such question of interpretation is to be determined by the trier of fact (*Hartford Acc. & Ind. Co. v Wesolowski*, 33 NY2d 169, 172; Restatement, Contracts 2d, § 212, subd [2]). In that situation, the surrounding circumstances of the parties at the time of the contract's execution will be considered (*Rogers v Niforatos*, 57 AD2d 984; *Mister Filters v Weber Environmental Systems*, 44 AD2d 639). Thus, where the intent must be determined by disputed evidence or inferences outside the written record of the contract, summary judgment is inappropriate (see *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285, 291; *Ackerman, Inc. v Mohawk Cabinet Co.*, 37 AD2d 655).

Here, the mortgage must be read together with the tax reserve statement and the truth in lending statement, since all were executed at substantially the same time and related to the same subject matter (see *Nau v Vulcan Rail & Constr. Co.*, 286 NY 188, 197; *Flemington Nat. Bank & Trust Co. v Domler Leasing Corp.*, 65 AD2d 29, 32, affd 48 NY2d 678). The bank's primary reliance, of course, is on the tax reserve statement which Mrs. Caplan signed and which sets forth the amounts deposited in advance for each type of tax and contains the notation: "Monthly payment required for taxes may vary from time to time. The foregoing is an estimate." In our view, however, the intent of the parties cannot be gleaned merely from the face of this one document (cf. *Teitelbaum Holdings v Gold*, 48 NY2d 51, *supra*). The tax reserve statement does not indicate that the bank intends to maintain five separate accounts no matter the excessiveness of the amount of the payments or the amount of the reserve which might result. While the

statement demonstrates how the original reserve amount was arrived at, it does not hint that the maintenance of five separate accounts is a mandatory method of computation for the amount of the monthly payments or the tax reserve. Since the monthly payment fixed in the statement was one twelfth of the tax total, it would have required considerable analytical foresight by the Caplans at the closing to anticipate how the reserve actually came to be handled.

Whether the bank's method of tax escrow collection is wholly consonant with the mortgage provision declaring that an additional payment equal to one twelfth of the estimated annual taxes will be required of the borrower is debatable. Since the mortgage and accompanying documents are absolutely silent as to the maintenance of separate reserve accounts, there is an ambiguity, the resolution of which can be aided by considering the conduct of the parties subsequent to the execution of the mortgage (see *Sattler v Hallock,* 160 NY 291; *Webster's Red Seal Pubs. v Gilberton World-Wide Pubs.,* 67 AD2d 339; *Hart v Hellman Co.,* 17 AD2d 438, affd 13 NY2d 633). The bank contends that any ambiguity has been resolved by the defendants' acquiescence in the system established and, in its brief, the bank asserts that the required monthly payments were increased several times since the inception of the mortgage. Although the record reveals that the monthly tax payments were increased to $350.92 sometime in 1976, neither party refers to any previous increases, and Mr. Caplan denies paying the full amount "for many years". In addition, the bank has not furnished the figures for the real estate taxes for the years prior to 1978, the amounts demanded for those years, or the amounts paid by the Caplans prior to September, 1976. It is apparent, then, that the issue of acquiescence cannot be decided on the current record and that interpretation of this mortgage no longer is a pure question of law but must be decided by the trier of fact (see *Janos v Peck,* 21 AD2d 529, affd 15 NY2d 509).

This conclusion is not altered by our decision in *Ball v Jamaica Sav. Bank* (49 AD2d 595, affd 39 NY2d 843). There, the parties executed a mortgage which provided, in relevant part (p 596): " '10. In addition to said payments, and at the sole option of the party of the first part, [the

bank], the party of the second part [plaintiffs] shall pay to the party of the first part on the first day of each and every month after the date hereof and until the bond or note extended by this agreement if [sic] fully paid, a sum equal to the taxes, assessments and other like charges, plus the premiums on insurance required by the party of the first part, next due and payable on or against said mortgaged premises (all as estimated by the party of the first part) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such premiums, taxes, assessments, and other like charges will become due and payable. Full irrevocable authority is hereby given the party of the first part by the party of the second part to pay such charges out of such escrow. If at any time any premium, tax, assessment, or other charge becomes due and payable and the escrow then on hand is insufficient to pay the same, the party of the second part shall pay such deficiency immediately on demand.' "

The *Ball* mortgagors contended, *inter alia,* that the escrow accounts — apparently computed on a basis similar to the one here — were excessive. Although the majority of this court affirmed the judgment for the Jamaica Savings Bank without comment, it is evident that the quoted paragraph provides more support for the maintenance of separate tax accounts than does the instant mortgage. In a dissent, Justice SHAPIRO viewed the clause as ambiguous and concluded it should be construed against the bank. We view *Ball* as distinguishable because the details of its mortgage clause — especially the "next due and payable" terminology — may have permitted the majority of our court to construe it as sanctioning a fully accrued system. The instant mortgage merely refers to "one-twelfth of the annual taxes". In any event, *Ball* affirmed a judgment after a nonjury trial in which the record established that the plaintiffs had acquiesced in the method of collection for 32 months.

*Matter of Surrey Strathmore Corp. v Dollar Sav. Bank of N. Y.* (36 NY2d 173, *supra*) also is distinguishable. In *Surrey,* the mortgagor unsuccessfully sought to require the mortgagee to pay interest on the tax escrow account on an

apartment complex. The case did not address the issue of the method of escrow account computation and the mortgage contained a clause not found in the Caplans' mortgage.

Since the documents before us are ambiguous with reference to whether they can accommodate a fully accrued system and the Caplans deny acquiescence, there should be a reversal and denial of summary judgment.

DAMIANI, J. P., MANGANO and BROWN, JJ., concur.

Appeal from an order of the Supreme Court, Westchester County, entered December 18, 1980, dismissed. (See *Matter of Aho,* 39 NY2d 241, 248.)

Judgment of the same court, entered April 20, 1981, reversed, order entered December 18, 1980 vacated, and plaintiff's motion for summary judgment is denied.

Defendants are awarded one bill of $50 costs and disbursements.