PROTEUS BOOKS LIMITED, Plaintiff,

v.

CHERRY LANE MUSIC CO., INC.,
Lauren Keiser, and Edward
Cimino, Defendants,

v.

PROTEUS PUBLISHING COMPANY, INC., Michael Brecher and Michael Shatzkin, Additional Defendants on Counterclaims.

No. 85 Civ. 4851 (RLC).

United States District Court,
S.D. New York.

June 6, 1988.

Karen Shatzkin, New York City, for plaintiff; Karen Shatzkin, Bernard Ouziel, of counsel.

Pryor, Cashman, Sherman & Flynn, New York City, for defendants; Gideon Cashman, Phillip R. Hoffman, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, Proteus Books, Ltd. ("Proteus"), is a British corporation, formed in 1983 to engage in book publishing. It filed a voluntary petition for bankruptcy in 1985. Proteus is the successor of Proteus Publishing, Ltd., another failed publishing venture. Michael Brecher, the general manager of Proteus Publishing—his father's business—decided when that venture failed that a publishing business specializing in music, particularly "rock and roll," and film subjects might have a better chance for success. He formed Proteus and shortly thereafter decided that a requisite for success was access to the North American market.

Brecher began negotiations with Cherry Lane Music Co., Inc. ("Cherry Lane"), a New York corporation, with its principal

place of business in Port Chester, New York. Cherry Lane is primarily a distributor of song books and sheet music, particularly of popular music compositions. Prior to these negotiations, Cherry Lane had begun to deal in trade books, i.e., books containing information texts and art work suited for general distribution.

Proteus and Cherry Lane entered into a distribution agreement on September 30, 1983, effective January 1, 1984. The agreement had an initial term of three years and could be extended for one or two years and could continue thereafter from year-to-year with both parties' acquiescence. The agreement's extension was subject to various other provisions irrelevant to our concerns.

One of the terms of the original agreement required Cherry Lane to "perform the services described herein with due professional skill and competence." (Memorandum of Agreement, Plaintiff's Exhibit 177, par. 4) There is no dispute that the author of this phrase was Michael Brecher. There is also no dispute that the phrase was not otherwise defined in the agreement or in any other writing binding on the parties. (Tr. 398–99, 643–44, 1170–72, 1105–06) It was also established on the record that during negotiations there was no discussion among the parties as to what the phrase meant. (Tr. 1170–73, 2206)

On March 29, 1985, the agreement was extended for one additional calendar year. Shortly thereafter, on June 7, 1985, Proteus, through its attorney, notified Cherry Lane that it was terminating the agreement because it regarded the agreement as breached by Cherry Lane.

This litigation followed. The case was brought on for trial on October 7, 1987, and took approximately eleven trial days. At the close of plaintiff's case, the court reserved defendants' rights to make motions and requested that counsel proceed immediately to put on the case for the defense. (Tr. 1657)

At the close of all the evidence, defendants moved for a directed verdict and the dismissal of all claims. (Tr. 2236 *et seq.*) At the conclusion of the arguments on the motion, the court announced that it was dismissing plaintiff's fraud claims and defendants' counterclaims. (Tr. 2320–21) I stated that I was disposed to grant the motion for a directed verdict as to the breach of contract claims and that if I were still an active judge, I would dismiss the case because I could not see how a fair-minded jury could side with the plaintiff. As an active judge, if I were reversed on appeal, I would have to retry the case. As a senior judge, I would not have to take the case on remand, and I did not feel it would be fair to have the case retried by another judge. The court, therefore, decided to send all claims to the jury except the fraud claims and counterclaims which had been dismissed. (Tr. 2320)

The jury returned a special verdict finding (1) that defendants had breached the due professional skill and competence yardstick in the agreement, entitling plaintiff to an award in damages of $2,851,441; (2) that defendants had breached the most-favored-nations clause of the agreement, but that plaintiff was entitled to no damages for the breach; (3) that defendants had breached an oral agreement to pay Proteus by way of bills of exchange and that Proteus was entitled to $317,713 in consequential damages for this breach; (4) that Cherry Lane had breached the March 29, 1985 amendment concering the monthly guaranteed sales of Proteus' books and should pay plaintiff $120,000 in damages for this breach; (5) that the rights agreement had not been breached, and (6) that defendants had converted Proteus' property by making Proteus' books part of defendants' inventory, entitling Proteus to $177,000 in damages for this infraction.

Defendants moved for judgment n.o.v. after the jury had been excused, and subsequently filed a motion to that effect with the court. Plaintiff filed briefs in opposition.

■ Plaintiff makes various technical arguments in opposing defendants' motion. Proteus maintains that Cherry Lane's motion reargues points of law made in its motion for summary judgment filed at the close of discovery and rejected by the

court. The rejection of an argument in support of a motion for summary judgment does not bar that argument from being made in another context. Summary judgment was denied because of the existence of genuinely disputed issues of fact which could only be resolved in a hearing. The merits of the legal arguments were never reached.

■ Nor is it relevant that Cherry Lane now raises arguments contrary to the court's jury instructions to which Cherry Lane did not object. Judicial economy is best served when the court denies the motions for a directed verdict and sends the case to the jury. After the jury verdict the court may then grant a motion for judgment n.o.v., if warranted. If an appeal is then taken and the appellate court disagrees with the trial court's determination that the jury verdict must be overturned, the appellate court may modify or reinstate the verdict and thereby avoid the necessity of a new trial. *Selle v. Gibb*, 741 F.2d 896, 900 (7th Cir.1984); *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 166 n. 2 (2d Cir.1980). That defendants' motion for directed verdict was denied and the matter submitted to the jury is not relevant in determining the appropriateness of a motion for judgment n.o.v.

■ The requisites for consideration of defendants' motion have been met. The right to make the motion for a directed verdict at the close of plaintiff's case was preserved by the court, and the motion was made at the close of all the evidence. *United States for Use and Benefit of Roper, IBG, Div. of Roper Corp. v. Reisz*, 718 F.2d 1004, 1007 (11th Cir.1983) ("[a] motion for a directed verdict at the close of plaintiff's case will not suffice [as the prerequisite for a motion for judgment n.o.v.] unless it is renewed at the close of all the evidence"); *accord Johnson v. Armored Transport of California, Inc.*, 813 F.2d 1041, 1042 (9th Cir.1987); *Baskin v. Hawley*, 807 F.2d 1120 (2d Cir.1986); *Della Grotta v. Rhode Island*, 781 F.2d 343, 349–50 (1st Cir.1986); *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285 (8th Cir.1982),

*cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).

Plaintiff makes a general objection that "many of [defendants'] arguments cannot properly be considered ... because Cherry Lane failed to raise them in its motion for directed verdict." Plaintiff's Memorandum in Opposition at 2. This contention surprises. Defendants went through plaintiff's claims and argued for directed verdict or dismissal as to each. (Tr. 2237–2270) The arguments may not have been as focused at the trial as they are in defendants' briefs, but plaintiff is fully cognizant of defendants' position on all the points raised. As was said in *Thezan v. Maritime Overseas Corp.*, 708 F.2d 175, 179 n. 2 (5th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 "technical precision is not necessary in stating grounds for the motion [for directed verdict] so long as counsel's argument made clear the defenses he was relying upon."

In this Circuit, a motion for judgment n.o.v. may be granted when "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970). This rule has been consistently reaffirmed. *See, e.g., Diebold v. Moore McCormack Bulk Transport Lines, Inc.*, 805 F.2d 55, 57 (2d Cir.1986); *Fiacco v. City of Rensselaer, New York*, 783 F.2d 319, 329 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); *Krulik v. Bd. of Educ.*, 781 F.2d 15, 21 (2d Cir.1985); *Martin v. Citibank, N.A.*, 762 F.2d 212, 217 (2d Cir.1985); *Konik v. Champlain Valley Physicians Hospital Medical Center*, 733 F.2d 1007 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984), *Mattivi v. South African Marine Corp., "Huguenot"*, *supra; Unijax, Inc. v. Champion Int'l, Inc.*, 516 F.Supp. 941, 950 (S.D.N.Y. 1981) (Carter, J.), *aff'd*, 683 F.2d 678 (2d Cir.1982).

In considering the motion, the evidence must be viewed in the light most favorable

to the non-moving party. The motion "will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him." *Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 959 (2d Cir.) (citations omitted), *cert. denied*, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970); *Noonan v. Midland Capital Corp.*, 453 F.2d 459 (2d Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 333 (1972).

▪ The jury clearly disregarded the court's instructions concerning how it was to determine whether defendants had breached their obligation to provide services with due professional skill and competence. Throughout the trial, the jury had heard witnesses for plaintiff being questioned on the meaning of this phrase. There was testimony that Michael Brecher was the author of the phrase and that it had not been discussed or otherwise defined in negotiations. The jury was instructed, after the court had marshalled the evidence setting forth the various contentions of the parties (Tr. 2443–2452), that "the claims with respect to the distribution agreement must be governed solely and exclusively by the written terms of the agreement." (Tr. 2453) The jury was charged as a matter of law that there was no meeting of the minds as to the meaning of the phrase "due professional skill and competence. Accordingly, the phrase is ambiguous and you must construe it in the light most favorable to defendants." (Tr. 2454)

That is what I understand to be the law of New York. *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 382, 489 N.E.2d 1283, 1284 (1985) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language"). *Shaw v. Manufacturers Hanover Trust Co.*, 68 N.Y.2d 172, 176, 507 N.Y.S.2d 610, 612, 499 N.E.2d 864 (1986)

("[E]quivocal contracts will be construed against the drafters ... .")

Although the evidence must be viewed in the light most favorable to the plaintiff, a conclusive deficiency of proof requires that the jury's verdict be overturned. Granting judgments n.o.v., like granting directed verdicts, "is a method for protecting neutral principles of law from powerful forces outside the scope of law—compassion and prejudice." *Unijax, Inc. v. Champion Int'l, Inc., supra*, 516 F.Supp. at 950 (quoting *Rutherford v. Illinois Central R.R. Co.*, 278 F.2d 310, 312 (5th Cir.), *cert. denied*, 364 U.S. 922, 81 S.Ct. 288, 5 L.Ed.2d 261 (1960)).

There was no evidence from which the jury could have concluded that Cherry Lane and Proteus had reached a meeting of the minds on what yardstick was to be utilized in determining whether Cherry Lane had provided its services within the parameters of due professional skill and competence. Cherry Lane was apparently engaged in a profitable business enterprise. There were a variety of reasons why Proteus' books were not being sold in sufficient volume. It could have been the unfamiliarity of Cherry Lane's work force with Proteus' category of books; it could have been that the books were overpriced (there was some evidence that the lower-priced books sold better); it could have been that Proteus' books were simply not saleable. In any event, no fair-minded jury could have followed the court's instruction to construe "due professional skill and competence" in the light most favorable to the defendants and therefore concluded on the basis of the evidence that defendants had violated that provision and owed $2,851,441 to Proteus.

Plaintiff cites a number of New York cases holding that when a contract provision is ambiguous, it is for the trier of fact to determine its meaning. *Ehrlich v. Abrams Instrument Corp.*, 53 A.D.2d 825, 385 N.Y.S.2d 299, 301 (1st Dep't 1976) ("where ... the meaning of the agreement is ambiguous, its construction is a fact issue to be presented to the jury to resolve."); *Amusement Business Under-*

writers, *A Division of Bingham and Bingham, Inc. v. American Int'l Group, Inc.*, 66 N.Y.2d 878, 889–81, 498 N.Y.S.2d 760, 763, 489 N.E.2d 729, 732 (1985) (when a term or clause of a contract is ambiguous and the parties' intent depends upon credible extrinsic evidence, then the issue is for the jury); *Village Savings Bank v. Caplan*, 87 A.D.2d 145, 451 N.Y.S.2d 159, 161 (2d Dep't 1982).

These cases, however, are not on point. In the first place, this case involves an integrated contract, pursuant to which "it is agreed that the foregoing represents the complete understanding of the parties." (Memorandum of Agreement, Plaintiff's Exhibit 177, Par. 22). In such cases, extrinsic evidence is not permissible since the parties have agreed that intent and meaning are to be found solely in the written instrument itself. *See, e.g., Frankel v. Stein & Day, Inc.*, 470 F.Supp. 209 (S.D.N.Y.1979) (Lasker, J.), *aff'd summarily*, 646 F.2d 560 (2d Cir.1980); *Fogelson v. Rackfay Construction Co. Inc.*, 300 N.Y. 334, 90 N.E.2d 881 (1950); *Jiffy Sew Corp. v. Paar*, 29 A.D.2d 643, 286 N.Y.S.2d 865 (1st Dep't 1968).

■ Moreover, defendants' argument that plaintiffs, at least for the period predating March 29, 1985, waived any right to claim a breach of the agreement is compelling. Any party to a contract is free to waive any of its provisions made for his benefit. *Horne v. Radiological Health Services, P.C.*, 83 Misc.2d 446, 371 N.Y.S.2d 948 (S.Ct.1975), *aff'd*, 51 A.D.2d 544, 379 N.Y.S.2d 374 (2d Dep't 1976). The intent to waive must be clear and cannot be inferred from any doubtful or equivocal act. *Id.*, 371 N.Y.S.2d at 961. However, a waiver may occur by acquiescence to acts contrary to the stated agreement. *See, e.g., American Nursing Care of Toledo, Inc. v. Leisure*, 609 F.Supp. 419, 429 (N.D. Ohio 1984); *Craig Food Industry, Inc. v. Taco Time Int'l, Inc.*, 469 F.Supp. 516 (D.Utah 1979). Waiver may occur by the intentional relinquishment of a known right, either expressly or by conduct inconsistent with the intent to enforce that right. *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208 (7th Cir.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980).

Here, the agreement reached on March 29, 1985, constituted a clear and unequivocal waiver of any claim based on defendants' wrongdoing prior to that date. A party does not extend a contract (and at that point the contract's original term had roughly a year to go) for an additional year, if it is dissatisfied with what has occurred heretofore. As indicated, plaintiff was under no pressure to renew the agreement—the original term had not run out. Plaintiff's act of extending the agreement has to be taken as a measure of its satisfaction or at least as an indication of its consent to forgive prior breaches.

■ Even assuming that the phrase "due professional skill and competence" had been given an ascertainable meaning, a jury is not entitled to award damages based on speculation or imagination. Damages "must be reasonably certain and directly traceable to the breach." *Kenford Co., Inc. v. County of Erie*, 67 N.Y.2d 257, 262, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234, 235 (1986). Where a clear case for damages has been made and the quantum of damages is unavoidably uncertain, beset by complexity or difficult to ascertain, recovery will not be denied. *Berley Industries, Inc. v. City of New York*, 45 N.Y.2d 683, 687, 412 N.Y.S.2d 589, 591, 385 N.E.2d 281, 282–83 (1978).

Here, the jury assessed what profits Proteus would have made if Cherry Lane had performed with due professional skill and competence. Proteus presented no evidence that it had any background of profit-making in the publishing field. Both it and its predecessor had ended in bankruptcy. There was some evidence of a prior arrangement with Macmillan for sale of its products in the United States, but these sales had been meager. Literary properties' profitability is difficult to assess. There was no concrete evidence that any of Proteus' products would have reached the level of profitability it projected and that the jury apparently accepted. Potential profits for book sales, absent considerably

greater and harder evidence than is present in this record, are highly speculative, and, in light of plaintiff's past failures in the field, highly suspect. *Cf. J.B. Lippincott Co. v. Lasher,* 430 F.Supp. 993, 995 (S.D.N.Y.1979) (Duffy, J.).

The jury was required to find that defendants had not violated the "due professional skill and competence" provision and to award judgment to defendants on that claim. We grant judgment n.o.v. to the defendants on the breach of contract claim.

■■■■ Proteus claims that Cherry Lane orally agreed to pay it by means of bills of exchange, which Proteus would then assign to a factor, International Factors, Ltd. ("IFL"), together with other Proteus accounts receivable. Cherry Lane stopped payment on March 15, 1985, on two bills of exchange totaling about $20,000 due for payment. Proteus contended that as a result, IFL stopped all payments to Proteus for five weeks, which payments would have aggregated roughly some 50,000 pounds. (Tr. 301–06) Proteus sought $424,851 in damages for these stoppages for losses it claims were incurred in worldwide sales on about eight books. (Plaintiff's Exhibit 140, Tr. 1473–76) At trial plaintiff's witness from IFL testified that the stoppage lasted from May 22 to June 12, 1985, and that Proteus had informed IFL that defendants had stopped payment because of demands Cherry Lane was receiving from Proteus' printer, which was dunning Cherry Lane to pay what Proteus owed the printer. (Defendants' Exhibit 20, 24; Tr. 1189–95; 307–08) The jury awarded Proteus $317,713 in consequential damages on this claim. That award must be overturned for two reasons.

First, even assuming that Cherry Lane wrongfully stopped payment, Proteus is entitled, at best, solely to interest on the $20,000 on which payment was stopped. *Meinrath v. Singer Co.,* 87 F.R.D. 422, 426 (S.D.N.Y.1980) (Weinfeld, J.) " '[A]ll damages for delay in the payment of money owing upon contract are provided for in the allowance of interest, which is in the nature of damages for withholding money that is due. The law assumes that interest is the measure of all such damages.' " (quoting

*Loudon v. Taxing District,* 104 U.S. (14 Otto) 771, 774, 26 L.Ed. 923 (1882)). Second, in the absence of special circumstances, *see Spang Industries, Inc. v. Aetna Casualty & Surety Co.,* 512 F.2d 365 (2d Cir.1975), consequential damages not arising "out of the immediate transaction between the contracting parties, but which stem from losses incurred by the non-breaching party in its dealings with third parties, are not recoverable unless those damages were reasonably foreseeable by the breaching party at the time of contract." *437 Madison Avenue Associates v. A.T. Kearney, Inc.,* 127 Misc. 2d 37, 488 N.Y.S.2d 950, 951 (S.Ct.App. Term, 1st Dep't 1985).

Certainly Cherry Lane, when it agreed to pay Proteus by way of the bills-of-exchange arrangement, did not anticipate that this arrangement would impinge upon Proteus' ability to market books. There is some doubt, in any event, as to whether this was even an actionable agreement. Proteus sought it as an aid to its getting started, and Cherry Lane consented to it as an accommodation. Proteus' subsequent failure or inability to pay its printer resulted in demands being made by the printer on Cherry Lane to pay Proteus' printing bill, with threats from the printer to sue. In any event, this is no case in which consequential damages could lie. The motion for judgment n.o.v. is granted and the award of $317,713 is set aside.

■■■■ While the other awards seem dubious to me, and I do not believe the evidence justifies them, setting aside the verdict in those instances would come too close to doing so because the court feels a different result would be more reasonable. That, however, would constitute an intolerable usurpation by the court of the jury's function. *Quintel Corp., N.V. v. Citibank, N.A.,* 606 F.Supp. 898, 908 (S.D.N.Y. 1985) (Sweet, J.). Accordingly, the motion is denied as to the award of $120,000 in damages for breach of the monthly guarantee and as to the award of $177,000 for conversion.

In sum, judgment n.o.v. is granted as to the breach of contract claims for failure to

perform with due professional skill and competence and the award of $2,851,441 in damages is, therefore, set aside, as is the award for $317,713 in consequential damages.

The motion to set aside the awards of $120,000 and $177,000 is denied.

IT IS SO ORDERED.