Jerome SCHURR, Plaintiff-Appellee,

v.

AUSTIN GALLERIES OF ILLINOIS, INC., a/k/a Austin Publishing Company, Defendant-Appellant.

No. 1416, Docket 82–7924.

United States Court of Appeals, Second Circuit.

Argued June 14, 1983.

Decided Oct. 5, 1983.

David S. Kashman, New York City (George Gottlieb, Gottlieb, Rackman & Reisman, P.C., New York City), for plaintiff-appellee.

Jerome R. Halperin, New York City (Jerome R. Halperin, P.C., New York City), for defendant-appellant.

Before VAN GRAAFEILAND, PIERCE and WISDOM,* Circuit Judges.

PIERCE, Circuit Judge:

Defendant appeals from an order of the United States District Court for the Southern District of New York entered on December 13, 1982, by Charles E. Stewart, Jr., Judge, finding defendant in contempt. The order found that defendant's manufacture, reproduction, and sale of certain works of art entitled "Hoyt's Cove," "Chasm," and "Horizon" constituted contempt by violating a Final Judgment on Consent entered on June 30, 1983.

## BACKGROUND

Plaintiff-appellee Jerome Schurr is a financially successful commercial artist who produces seriagraph images of California and Western landscape scenes in an impressionistic form known as the California or Western style. Defendant-appellant Austin Galleries of Illinois, Inc. (Austin), is a chain of retail art galleries in the Chicago and

---

* Senior Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

Detroit areas. In 1981, Austin formed a separate publishing division, Austin Publishing Company, to publish and distribute, at wholesale, signed limited edition prints. Among others, Austin manufactures and distributes the works of Robert Wilson, a commercial artist who creates California and Western coastline, lake, and mountain scenes.

Schurr's style of creation, accomplished by a silk screening method, features images of mountains, bodies of water, and sky. One basic color is chosen to represent each landscape component. The mountains are shown as a series of flat, superimposed planes, each slightly offset from the next, with the planes varying sequentially in thirty to thirty-five gradations of shades of the same color from light to dark. A narrow border in a contrasting color, representing a beach, appears at the interface of the water and mountains. People, buildings, wildlife or other details do not appear in Schurr's works. The Schurr works are priced at $600 to $1500. Also, they have become commercially popular as decorative art when reprinted as low price posters. According to Austin, the Schurr works are not of museum quality and are not considered fine art.

In April, 1982, Schurr became aware that Austin was advertising and selling works of art attributed to Robert Wilson entitled "Blue Bay," "Canyon Lake," "Rocky Coast," "Reflections," and "Solitude." In May, 1982, Schurr commenced an action in the United States District Court for the Southern District of New York, in which he claimed that the five works of Wilson, manufactured and distributed by Austin, violated and infringed upon his (Schurr's) copyrighted works.

After settlement negotiations, the parties executed a Settlement Agreement and a Final Judgment on Consent. Paragraphs 2b and 3 of the Settlement Agreement and paragraph 5 of the Final Judgment on Consent provided, *inter alia,* that Austin would not manufacture, reproduce, print, or sell any work "which visually simulates the style and subject matter of any work created" by Jerome Schurr.[1] E. Leonard Rubin, Austin's then Chicago counsel, forwarded a transmittal letter, dated June 16, 1982, to Schurr's New York counsel with the signed Settlement Agreement and Final Judgment on Consent. Paragraph three of the transmittal letter stated:

> I feel it important to once again stress that the language ". . . visually simulates the style and subject matter of any work created by SCHURR . . ." as it appears in paragraphs 2b) [sic] and 3 of the Settlement Agreement and in paragraph 5 of the Final Judgment on Consent, is not intended to and should not be interpreted to limit in any way any lawful right of Austin Galleries of Illinois, Inc. to use or sell works that imitate the style of Jerome Schurr, so long as such imitation does not constitute copyright infringement; the point is that Austin Galleries is not agreeing to surrender any of the

---

1. Paragraph 2b of the Settlement Agreement stated that "AUSTIN is presently in the possession or control of no other works which visually simulate the style and subject matter of any work created by SCHURR." Paragraph three of the Settlement Agreement stated:

> Except as specifically permitted herein, AUSTIN, its officers and agents, and any party in privity with them, shall forthwith terminate the manufacture, reproduction, printing or sale on any medium, of any work which visually simulates the style and subject matter of any work created by SCHURR, including but not limited to the aforesaid works of AUSTIN entitled "ROCKY COAST," "CANYON LAKE," "SOLITUDE," "REFLECTIONS," and "BLUE BAY."

Paragraph five of the Final Judgment on Consent stated:

> Defendant AUSTIN PUBLISHING COMPANY, its officers, servants, employees and attorneys, and those persons in active concert or participation with them, are hereinafter permanently restrained and enjoined from manufacturing, reproducing, printing or selling in any medium, any work which visually simulates the style and subject matter of any work created by plaintiff JEROME SCHURR, including but not limited to the works heretofore sold by defendant entitled ROCKY COAST, CANYON LAKE, SOLITUDE, REFLECTIONS and BLUE BAY.

lawful rights it may have under United States copyright laws.

On June 30, 1982, the Final Judgment on Consent was entered by the United States District Court for the Southern District of New York.

On November 24, 1982, Schurr initiated a proceeding to hold Austin in contempt for the latter's alleged failure to comply with the Final Judgment on Consent. Schurr contended that four new works by Robert Wilson—"Eagle Pass," "Rocky Reach," "Chasm," and "Cascade" (also known as "Hoyt's Cove")—which were featured in an advertisement which appeared in the November 1982 issue of *Art Business News,* violated the Final Judgment on Consent.

Upon Schurr's application, and after an initial visual comparison of the works at an oral hearing held by Judge Stewart, a temporary restraining order was entered prohibiting further sale of the four new Wilson works. The order was entered on November 24, 1982.

On November 29, 30, and December 1, 1982, a hearing as to contempt was held before the district judge. At the hearing, the four aforementioned Wilson works and another work—"Horizon"—were examined. Immediately following the hearing, on December 1, 1982, the judge rendered his opinion from the bench. He found Austin in contempt and enjoined further sales of "Chasm," "Horizon," and "Hoyt's Cove." An order encompassing the district judge's conclusion, dated December 8, 1982, was entered on December 13, 1982. This appeal followed.

## DISCUSSION

■ A consent judgment or decree is "an agreement of the parties entered upon the record with the sanction and approval of the [c]ourt." *Town of Oyster Bay v. Forte,* 34 Misc.2d 5, 6, 219 N.Y.S.2d 456, 459 (N.Y.Sup.Ct.1961); *see also Hart Schaffner & Marx v. Alexander's Department Stores, Inc.,* 341 F.2d 101, 102 (2d Cir.1965). For purposes of enforcement, a consent judgment should be construed and interpreted as a contract. *United States v. ITT Conti-*

*nental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975); *Collins v. Thompson,* 679 F.2d 168, 172 (9th Cir.1982); *Robinson v. Vollert,* 602 F.2d 87, 92 (5th Cir.1979), *petition for reh'g and reh'g en banc denied,* 609 F.2d 1177 (5th Cir.1980); *New York State Association for Retarded Children, Inc. v. Carey,* 596 F.2d 27, 37 (2d Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979). As a contract, the scope of the consent judgment should be ascertained within the four corners of the instrument. *ITT Continental Baking Co.,* 420 U.S. at 238, 95 S.Ct. at 935; *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971); *Robinson,* 602 F.2d at 92; *New York State Association for Retarded Children, Inc.,* 596 F.2d at 37; *Hart Schaffner & Marx,* 341 F.2d at 102.

■ However, "reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the consent [judgment], any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." *ITT Continental Baking Co.,* 420 U.S. at 238, 95 S.Ct. at 935 (footnote omitted); *see also New York State Association for Retarded Children, Inc.,* 596 F.2d at 37. Additionally, a court may interpret the terms contained in a consent judgment by examining extrinsic documents. *Instrumentalist Co. v. Marine Corps League,* 694 F.2d 145, 151 (7th Cir.1982). Further, an examination of "the circumstances surrounding the order and the context in which the parties were operating" has been found by the Supreme Court not to violate the "four corners" rule. *ITT Continental Baking Co.,* 420 U.S. at 243, 95 S.Ct. at 938.

■ The issue herein is whether the district court erred when it determined that Austin was in contempt of the June 30, 1982 consent judgment for manufacturing and selling the works of art entitled "Hoyt's Cove," "Chasm," and "Horizon." For the reasons which follow, we determine

that the district court erred, and we reverse its decision.

The starting point of our analysis is, of course, the language of the consent judgment. Paragraph five of the consent judgment stated that Austin would not reproduce, print or sell "any work which visually simulates the style and subject matter of any work created" by Jerome Schurr. The district court judge, interpreting the language, stated:

I think, at least for the purposes of this proceeding, I don't have difficulty with the words in the consent judgment which are applicable here, that is, the defendant is enjoined from publishing, selling any work which visually simulates the style and subject matter of any work created by the plaintiff as applied to the facts of this case. *I think that language is sufficiently clear and unambiguous.*

. . . .

For future reference I find that the letter [of June 16, 1982], Exhibit 1, *which I took into account in interpreting the consent judgment,* was delivered along with the consent judgment and was, so far as appears, accepted by the plaintiff [Schurr] at the time it signed the consent judgment. So that I find that it should be incorporated, in effect, with the consent judgment. . . .

(Emphasis added).

Austin contends that the district court properly incorporated the explanatory language of the letter of June 16, 1982 in interpreting the provisions of paragraph five of the consent judgment. However, Austin argues in its brief that the language in paragraph five "had special meaning to the parties" and that "the language employed by plaintiff's counsel ... were [sic] intended between counsel for the parties to mean that Austin was not to be limited in any way from using or selling works that imitated the style of the plaintiff, Schurr, so long as such imitation did not constitute copyright infringement."

Schurr contends that, because the language is clear on its face, the district court should have disregarded the letter of June 16, 1982 as it purported to vary the terms of the consent judgment. Additionally, Schurr states that "[w]hile resort to extrinsic evidence of the parties' intent is sometimes permissible in order to resolve ambiguities in the meaning of the words which the parties chose to express that intent, there is no such ambiguity here." Last, Schurr contends that the district court's order should nevertheless be affirmed as it "did no more than acknowledge" the letter in its opinion and thus committed no reversible error.

We conclude that the district court clearly erred by considering the letter of June 16, 1982 in conjunction with the consent judgment in light of its specific finding that the language of the consent judgment was "clear and unambiguous." Under New York contract law, a court may only consider extrinsic evidence in contract interpretation if the intent of the parties cannot be ascertained from the document itself because language contained therein is ambiguous. *Teitelbaum Holdings, Ltd. v. Gold,* 48 N.Y.2d 51, 56, 396 N.E.2d 1029, 1032, 421 N.Y.S.2d 556, 559 (1979); *Canter v. Canter,* 91 A.D.2d 1180, 1180, 459 N.Y.S.2d 153, 154 (4th Dep't 1983); *Village Savings Bank v. Caplan,* 87 A.D.2d 145, 149, 451 N.Y.S.2d 159, 161 (2d Dep't 1982); *see also Nathan v. Monthly Review Press, Inc.,* 309 F.Supp. 130, 134 (S.D.N.Y.1969). Since the district court expressly found that the language in the consent judgment was unambiguous, it erred by considering the letter of June 16, 1982 in its interpretation of the language of paragraph five of the consent judgment.

■ Because the resolution of this case turns on interpretation of written documents, and not credibility of witnesses, we deem it expedient in light of limited judicial resources to resolve the issue of contract construction presented herein. First, the interpretations urged upon us by the parties regarding the language of the consent judgment do succeed in convincing us that the language in paragraph five, a pivotal section, is ambiguous. Contrary to the district court's view, we do not believe that the intent of the parties can be ascertained

from the face of the consent judgment. Second, because the language is ambiguous as to the intent of the parties, we deemed it necessary to read the letter of June 16, 1982, sent by Austin's then counsel concurrently with the return of the consent judgment, as an aid to interpretation of the parties' intent. Next, having considered the letter in conjunction with the consent judgment, we conclude that the consent judgment is not enforceable because it is apparent that there was no meeting of the minds regarding the most essential term and condition of the contract-like consent judgment—the scope of the restraint imposed on Austin regarding the selling and manufacturing of works of art similar to Schurr's.

■ Under New York contract law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties. *Ogden v. Allen,* 21 A.D.2d 87, 89, 249 N.Y.S.2d 142, 144 (3d Dep't 1964), *aff'd,* 14 N.Y.2d 349, 200 N.E.2d 559, 251 N.Y.S.2d 661 (1964); *see also Restaurant Associates Industries, Inc. v. Anheuser-Busch, Inc.,* 397 F.Supp. 1213, 1217 (S.D.N.Y.1975), *decided on the merits,* 422 F.Supp. 1105 (S.D.N.Y. 1976). If there is no meeting of the minds on all essential terms, there is no contract. This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof. *Gupta v. University of Rochester,* 57 A.D.2d 731, 731, 395 N.Y.S.2d 566, 567 (4th Dep't 1977); *see also Wilson-Rich v. Don Aux Associates, Inc.,* 524 F.Supp. 1226, 1230 n. 7 (S.D.N.Y.1981); *Litton Industries Credit Corp. v. Plaza Super of Malta, Inc.,* 503 F.Supp. 83, 86 (N.D. N.Y.1980). Herein, Austin and Schurr did not arrive at the point of mutual assent necessary regarding the language in paragraph five of the consent judgment. As correctly noted by the district court, the letter was delivered with the consent judgment and accepted by Schurr before he signed the consent judgment. Austin's then counsel indicated in the letter—prior to Schurr's signing—that the language of the consent judgment should not be read "to limit in any way any lawful right of Austin Galleries of Illinois, Inc. to use or sell works that imitate the style of Jerome Schurr, so long as such imitation does not constitute copyright infringement...." The effect of this letter from Austin's then counsel, accompanying as it did the proposed consent judgment, was to render the consent judgment an utter nullity. Despite receiving this letter, Schurr signed the consent judgment and returned it to the court. He presently argues that the language of paragraph five of the consent judgment should cover all works of art which imitate the style of Jerome Schurr irrespective of copyright infringement. Both positions are reasonable, but they reflect the positions that the parties would have been expected to take prior to reaching mutual agreement on the scope of the language. We are convinced that the parties did not progress beyond that point, that there was no meeting of the minds on the meaning of the crucial language regarding scope, and that, consequently, the consent judgment must now be declared a nullity and unenforceable.

We have considered the other contentions of the parties, most of which focused on the similarities and differences of the works of Schurr and the works of Wilson. Because we declare the consent judgment a nullity and unenforceable, we deem it unnecessary to address those contentions.[2]

**2.** We do note, however, that after having viewed the works of both artists during oral argument, and later in chambers, we fail to discern many similarities in the copyrighted Schurr works and the Wilson works "Chasm," "Horizon," and "Hoyt's Cove." Both artists painted in the California or Western style—which according to expert testimony was not originated by either artist—using a series of gradations of color. However, Schurr used a silk screen technique whereas Wilson used the less expensive seriagraph screening technique. When marketed, Schurr's works were priced substantially higher than those of Wilson. Further, a visual comparison of the works indicates that Wilson's works exhibit different colors which are distinguished by fewer gradations and have sharper delineations than Schurr's works. Additionally, the subjects of Wilson's works are more angular than those contained in Schurr's works. At best, the most that can be said of a comparison of the works

CONCLUSION

· For the foregoing reasons, we reverse the order of the district court finding Austin in contempt for its failure to comply with the Final Judgment on Consent of June 30, 1982.

VAN GRAAFEILAND, Circuit Judge, concurring:

Because a consent judgment has the attributes of both a contract and a judicial decree, *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 n. 10, 95 S.Ct. 926, 934 n. 10, 43 L.Ed.2d 148 (1975), the proper functioning of the judicial process precludes undisclosed understandings which vary from the terms of the decree. *See Artvale, Inc. v. Rugby Fabrics Corp.*, 303 F.2d 283, 284 (2d Cir.1962). Where the specificity provisions of Fed.R.Civ.P. 65(d) are involved, *see Diapulse Corp. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir.1980), it is especially important that both court and counsel are in agreement as to the nature of the conduct which is to be enjoined. *See Brumby Metals, Inc. v. Bargen*, 275 F.2d 46 (7th Cir.1960). Since there was no such accord in the instant case, I agree that the injunction should be vacated.

of the two artists is that they exist in the same broad genre. Genres of art, known as movements, are common throughout our recorded history. One hesitates to think of the creativity that would have been suppressed, and the beauty civilization would have been deprived of, if creative individuals were forbidden from creating art in the same genre. Indeed, there would be many fewer art movements that we presently regard as common to the art world. Obviously there is a balance which must be struck between protecting the original creation of an individual and the creativity which is ignited in others who view the work of that individual, who view other works in the same genre, or who simply achieve a similar original creation but by a separate route. Herein, if one had to decide on which way the balance must swing, careful consideration would have to be given to protecting the creativity of those—including Wilson—who have viewed the California or Western style of painting and have translated those experiences into their own creations.