**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Stephen D. GELLAS, Dierdre C. Steinhaus and Robert E. Ainbinder, Defendants.**

**No. 91 CIV. 6346(WCC).**

United States District Court, S.D. New York.

April 17, 1998.

Securities and Exchange Commission, Washington, DC (James A. Brigagliano, Tracy M. McGowan, of counsel), Securities and Exchange Commission, New York, NY (Caren N. Pennington, of counsel), for Plaintiff.

Wolman, Babitt & King, L.L.P., of counsel to Dominick J. Porto, Robert E. Ainbinder, New York, NY (Derek Wolman, of counsel), for Defendants.

## OPINION AND ORDER

CONNER, Senior District Judge.

Before the Court is defendant Robert Ainbinder's motion to vacate a default judgment entered against him by plaintiff Securities and Exchange Commission (the "SEC"). For the reasons discussed below, the motion is denied.

## BACKGROUND

On September 20, 1991, the SEC commenced the above-captioned action against Ainbinder and his co-defendants. In its complaint, the SEC alleged, *inter alia*, that Ainbinder violated certain federal securities laws, rules, and regulations by fraudulently liquidating stocks through a clearing firm and wrongfully obtaining extensions of credit.

On September 23, 1992, Ainbinder and the SEC executed a written Consent Agreement, agreeing to entry of a permanent injunction against Ainbinder without his admission or denial of the SEC's allegations. On February 10, 1993, this Court entered a Final Judgment of Permanent Injunction that incorporated the terms of the Consent Agreement (the "Consent Judgment"). The Consent Judgment permanently enjoined Ainbinder from violating certain securities laws, rules, and regulations. It further provided that "this Court will retain jurisdiction for all purposes including implementation and enforcement" of the Consent Judgment.

Approximately one month after entry of the Consent Judgment, the SEC commenced an administrative proceeding against Ainbinder by issuing an Order Instituting Proceedings Pursuant to Sections 15(b) and 19(h) of the Securities Exchange Act of 1934 (the "OIP"). The purpose of this proceeding was to determine whether any disciplinary sanctions should be imposed on Ainbinder based on entry of the permanent injunction. *See* 15 U.S.C. § 78*o*(b)(4)(C), (b)(6)(A)(iii). The OIP required Ainbinder to file an answer within fifteen days and stated that failure to answer would result in default, and would allow the proceeding to be determined against him with the SEC's allegations deemed true.

Ainbinder maintains that his attorney at the time, Herbert Jacoby, told him that an answer had been filed. Apparently, this proved to be untrue; the SEC did not receive an answer or other response to the OIP. Accordingly, on June 1, 1993, the SEC issued a Default Order barring Ainbinder from association with any broker, dealer, investment company, investment adviser or municipal securities dealer.

Four years later, on March 19, 1997, Ainbinder filed a *pro se* motion with this Court seeking to vacate the Consent Judgment and, apparently, the Default Order. Ainbinder argued that he had received ineffective assistance from Paul Chernis, the attorney who advised him to enter the Consent Agreement. He maintained that he would not have entered into the consent arrangement if he had been informed that the Consent Judgment could impair his ability to continue working in the securities industry. Subsequently, after retaining his current attorney, Ainbinder withdrew that motion.

Instead, Ainbinder petitioned the SEC to set aside the Default Order on the ground that he had received ineffective assistance from Herbert Jacoby, the attorney who apparently failed to file an answer to the OIP. On October 1, 1997, the SEC issued an order denying the petition. Ainbinder did not appeal this denial to the Second Circuit Court of Appeals pursuant to Section 25(a)(1) of the Exchange Act, 15 U.S.C. § 78y(a)(1).

Instead, on February 17, 1998, Ainbinder filed the instant motion seeking to vacate the SEC's Default Order pursuant to Rules 60(b)(4) and 55(c) of the Federal Rules of Civil Procedure. He contends that the Consent Agreement, as incorporated by the Judgment, barred the SEC from instituting the administrative proceeding that precipitated the Default Order. Accordingly, Ainbinder asserts that the Default Order is void and must be vacated pursuant to Rule 60(b)(4).

## DISCUSSION

Rule 60(b)(4) provides that a court may relieve a party from a final order if that order is void.[1] However, except in limited circumstances not present here, a Rule 60(b) motion must be brought in the court that rendered the disputed order. *See* 12 Moore's Federal Practice § 60.60[1], at 60–190 to 60–191 (3d ed.1997); 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2865, at 377 (2d ed.1995); *accord Bankers Mortgage Co. v. United States,* 423 F.2d 73, 78 & n. 9 (5th Cir.1970); *Taft v. Donellan Jerome, Inc.,* 407 F.2d 807, 809 (7th Cir.1969); *Teltronics Servs., Inc. v. Anaconda–Ericsson, Inc.,* 587 F.Supp. 724, 729 (E.D.N.Y.1984), *aff'd,* 762 F.2d 185 (2d Cir.1985); *cf. United States ex rel. Aigner v. Shaughnessy,* 175 F.2d 211 (2d Cir.1949) (refusing to consider transforming improper collateral attack on denaturalization decree, made by way of habeas corpus petition, into Rule 60(b) motion because it was not filed in the court that rendered the original judgment). In the instant case, the Default Order was entered not by this Court, but by the SEC.

In addition, Rule 60(b) appears not to apply to final orders of administrative agencies such as the SEC. *See Wapnick v. United States,* No. 95–4844, 1996 WL 636106 (E.D.N.Y. July 31, 1996) ("[B]y its very terms, [Rule 60(b)] applies to judgments and orders in civil cases before federal district courts.... It does not apply to administrative actions taken by agencies of the federal government."), *aff'd,* 112 F.3d 74 (2d Cir. 1997). At the very least, Rule 60(b) does not

---

**1.** Rule 55(c) provides that a default order may be     set aside in accordance with Rule 60(b).

apply to administrative determinations where, as here, Congress has provided a specific mechanism for review of such actions. *See* 15 U.S.C. § 78y(a)(1) (final orders of the SEC may be appealed to the appropriate federal court of appeals within 60 days of the order); *see also Maschler v. National Ass'n of Securities Dealers*, 827 F.Supp. 131 (E.D.N.Y.1993) (judicial review of final SEC disciplinary orders is limited exclusively to the appropriate federal court of appeals).

As noted, Ainbinder did not appeal to the Second Circuit the SEC's order denying his petition to set aside the Default Order. The time limit for such an appeal having expired, Ainbinder now seeks to vacate the Default Order via a Rule 60(b) motion in this Court. However, "Rule 60(b) is not a substitute for a proper and timely appeal." 12 Moore's Federal Practice § 60.02[2], at 60–21 (3d ed.1997). The proper mechanism for directly reviewing the Default Order was an appeal to the Second Circuit, not a Rule 60(b) motion.

■ Arguably, a distinction can be made between a direct challenge to the Default Order, which in this case is not authorized by Rule 60(b), and a challenge to the initiation of the administrative proceeding that precipitated the Default Order. The latter challenge calls not upon this Court's power under Rule 60(b), but upon the jurisdiction it retained under the Consent Judgment. If Ainbinder is correct that the Consent Agreement (as incorporated by the Consent Judgment) prohibited the SEC from even commencing further administrative proceedings, then the Court would have jurisdiction to redress such a violation.

■ A consent judgment is "an agreement of the parties entered into upon the record with the sanction and approval of the [c]ourt." *Schurr v. Austin Galleries of Ill., Inc.*, 719 F.2d 571, 574 (2d Cir.1983). It is "a contract to end a lawsuit in which the parties agree to the relief to be provided by the judgment and the wording to effectuate that relief." *Audiovisual Publishers, Inc. v. Cenco Inc.*, 964 F.Supp. 861, 875 (S.D.N.Y.1997). For purposes of enforcement, a consent judgment should be construed and interpreted as a contract. *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *United States v. International Bhd. of Teamsters, Chauffeurs, Warehousmen & Helpers of Amer., AFL–CIO*, 141 F.3d 405, 406 (2d Cir. 1998). Because a consent judgment embodies compromises for the sake of settling a litigation, unlike other contracts it cannot be said to have a discernable "purpose." *See ITT*, 420 U.S. at 235–36 (citing *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)). Rather, the scope of a consent judgment must be ascertained within its four corners. *Armour*, 402 U.S. at 682; *International Bhd.*, 141 F.3d at 406.

■ However, "reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the consent order .... Such reliance does not in any way depart from the 'four corners' rule." *ITT*, 420 U.S. at 238. Moreover, if the wording is susceptible to more than one reasonable construction, then the court may look to extrinsic evidence. *See Audiovisual Publishers*, 964 F.Supp. at 876; *United States v. American Soc'y of Composers, Authors and Publishers*, 782 F.Supp. 778, 788 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 21 (2d Cir.1992).

Ainbinder's argument that further disciplinary proceedings against him were barred by the Consent Agreement is based on paragraph 6 of that Agreement, which provides:

Defendant Ainbinder further acknowledges that he has been informed and understands that [the SEC] has not waived, and does not waive, its rights to commence, at its sole and exclusive option: (a) any civil or criminal contempt proceedings or actions against defendant Ainbinder ... as a result of this matter; or (b) any further proceeding or action against defendant Ainbinder arising from or related to facts not alleged in the [SEC's September 20, 1991] Complaint.

It is not disputed that the administrative disciplinary proceeding against Ainbinder was not a contempt proceeding and that it was based on facts alleged in the civil complaint. However, paragraph 6 merely states that Ainbinder has been informed of two

types of proceedings or actions which may be brought against him. It does not expressly bar other types of proceedings or actions.

Any doubt as to the meaning of this provision is dispelled by paragraph 5 of the Consent Agreement, which provides in relevant part:

> Defendant Ainbinder further acknowledges that he has been informed and understands that [the SEC], at its sole and exclusive discretion, may refer ... this matter ... to any person or entity having appropriate civil, administrative or criminal jurisdiction.

The plain language of this provision indicates that the SEC retained the right to refer the matter for appropriate administrative or legal action. Viewing the Consent Agreement as a whole, it becomes apparent that paragraph 6 merely serves to clarify, and indeed expand, the rights expressly reserved by the SEC in paragraph 5. Paragraph 5 establishes that "this matter" may be referred for further proceedings; paragraph 6 broadens this right to collateral contempt proceedings and proceedings based on unrelated facts.

Even assuming, *arguendo*, that the wording of paragraph 6 is ambiguous, extrinsic evidence conclusively demonstrates that further administrative proceedings were contemplated. In an affidavit submitted in support of his petition to the SEC to set aside the Default Order, Ainbinder stated:

> Mr. Chernis negotiated [the Consent Agreement] with the SEC. Mr. Chernis explained to me that I would sign a declaration that I would never again commit the infractions claimed by the [SEC]. Mr. Chernis also stated that the SEC could start an Administrative Proceeding against me . . . .

Indeed, it is common practice for the SEC to initiate administrative disciplinary proceedings under 15 U.S.C. § 78*o*(b)(4)(C) and/or § 78*o*(b)(6)(A)(iii) based on entry of a consent judgment enjoining an individual from further violations of the securities laws. *See, e.g., Martin Kaiden*, —— S.E.C. Docket ——, 1998 WL 128189, at *1, 7 n. 12 (1998); *Robert Sayegh*, 65 S.E.C. Docket 1622, 1997 WL 629669 (1997); *Samuel O. Forson*, 65 S.E.C. Docket 38, 1997 WL 406200, at *1 (1997)

(opinion of the Comm'n); *Daniel D. Dietrich*, 62 S.E.C. Docket 2625, 1996 WL 566596 (1996). This practice is followed even where, as here, the consent judgment involves no admissions of guilt. *See, e.g., Russell G. Koch*, 64 S.E.C. Docket 1538, 1997 WL 259680, at *1–2 (1998) (opinion of the Comm'n); *Dietrich*, 62 S.E.C. Docket 2625.

Therefore, there has been no violation of the Consent Judgment and the Court lacks subject matter jurisdiction to directly review the appropriateness of the Default Order.

## CONCLUSION

For the reasons discussed above, Ainbinder's motion is denied.

SO ORDERED.