*Clayton Services LLC v. Sun West Mortgage Company, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> GERARD E. LYNCH,
> BETH ROBINSON,
> *Circuit Judges*.

_____

CLAYTON SERVICES LLC,

> *Plaintiff-Appellee*,

v. 22-511

SUN WEST MORTGAGE COMPANY, INC.,

> *Defendant-Appellant*.

_____

For Plaintiff-Appellee: FRANK J. SILVESTRI, JR. (Kristen G. Rossetti, *on the brief*), Verrill Dana LLP, Westport, CT.

For Defendant-Appellant: G. ERIC BRUNSTAD, JR., Dechert LLP, New Haven, CT; Scott E. Gizer, *on the brief*, Early Sullivan Wright Gizer & McRae LLP, Los Angeles, CA.

Appeal from a judgment of the U.S. District Court for the District of Connecticut (Dooley, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Sun West Mortgage Company, Inc. ("Sun West") appeals from a judgment of the U.S. District Court for the District of Connecticut (Dooley, *J.*) awarding $1,664,228.91 in contractual damages, statutory prejudgment interest, and offer of compromise interest to Plaintiff-Appellee Clayton Services LLC ("Clayton"). After a six-day bench trial, the district court found that Sun West breached its contract with Clayton by failing to pay any amount toward the invoices issued by Clayton for performing Post-Close Quality Control ("PCQC") services for Sun West. For the reasons set forth below, we affirm the district court's judgment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

"We review the district court's findings of fact after a bench trial for clear error and its conclusions of law de novo." *Sacerdote v. New York Univ.*, 9 F.4th 95, 119 (2d Cir. 2021) (citation omitted). "Mixed questions of law and fact are likewise reviewed *de novo.*" *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178 (2d Cir. 2001). A district court's interpretation of a contract and threshold determination regarding whether a contract is ambiguous are subject to de novo review. *See Lee v. BSB Greenwich Mortgage Ltd. P'ship*, 267 F.3d 172, 178 (2d Cir. 2001).

"Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). "The decisions as to whose testimony to credit and which of permissible inferences to draw are solely within the province of

the trier of fact, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Cifra v. G.E. Co.*, 252 F.3d 205, 213 (2d Cir. 2001) (citation and internal quotation marks omitted).

## I. Interpretation of the Contract

We apply New York law to interpret the contracts at issue because the relevant agreements identify New York law as governing any suits. *See generally Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000). "In interpreting a contract under New York law, words and phrases . . . should be given their plain meaning." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (citation and internal quotation marks omitted). "Extrinsic or parol evidence is admissible only if a court finds an ambiguity in the contract." *Donohue v. Cuomo*, 38 N.Y.3d 1, 13 (2022) (citation and internal quotation marks omitted). Ambiguity "arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations." *Id.* (citation omitted). But when a contract "is complete, clear and unambiguous on its face," it "must be enforced according to the plain meaning of its terms." *Id.* (citation omitted).

The district court correctly found that the parties' agreements are unambiguous and do not require Clayton to perform reverification PCQC services in accordance with agency guidelines. The parties' Master Services Agreement ("MSA") contains an "Entire Agreement" clause that states: "This Agreement and the attached Exhibits supersede all prior agreements and understandings between the Parties with respect to the subject matter of this Agreement and the applicable Statements of Work and constitutes the complete agreement and understanding between the Parties unless modified in a writing signed by Clayton and [Sun West]." Jt. App'x at 74.

3

The district court correctly found that this clause indicates the parties' intention that the contract is a fully integrated agreement. *See Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 599–600 (1997) ("[T]he purpose of a general merger provision . . . is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing . . . by establishing the parties' intent that the Agreement is to be considered a completely integrated writing."). Thus, because we find the agreement's terms to be unambiguous, we disregard any prior or subsequent agreements and understandings between the parties that are not reflected in a signed writing.

Sun West relies on a provision in the Statement of Work ("SOW") that it refers to as a "Review Clause," which is titled "Validity of Credit Underwriting" and states: "Clayton will review each loan using credit guidelines provided by [Sun West]. The result of this review will be to ascertain conformance with the guidelines and to assign a credit event grade to each loan." Jt. App'x at 81. Sun West argues that the parties' understanding based on industry practice was that these guidelines would include agency requirements—specifically, the guidelines of the Federal National Mortgage Association ("Fannie Mae"), which require PCQC reverifications to be completed in a particular manner. But even assuming *arguendo* that the district court legally erred by not considering evidence of industry custom or practice when concluding that the contract was unambiguous, the record does not contain evidence showing the existence of a firmly understood custom or practice among PCQC vendors of defaulting to perform reverification services in accordance with Fannie Mae guidelines. *See L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) ("[P]roof of custom and usage consists of proof that the language in question is fixed and invariable in the industry in question." (citation and internal quotation marks omitted)). Moreover, the contract does not specifically reference

4

agency guidelines. And, as set forth below, the district court correctly noted that the provisions specifically related to reverification services suggest that an agency guideline requirement was *not* intended for those services.

As to Sun West's argument that Clayton must have understood that the reverification services must comply with Fannie Mae's requirements because an "overwhelming" number of Sun West loans were intended to be assigned to Fannie Mae, we invited Sun West to submit a post-argument letter brief citing evidence to support this contention. Oral Arg. R. 12:05. Sun West's letter brief cites no such evidence. It instead points to evidence documenting that only 17.3 percent of the loans Clayton reviewed between January and April 2016 had reverification errors, and of those loans only a small portion were bound for assignment to Fannie Mae. Sun West Supp. Br. at 1–2.

In addition, the district court noted, and the parties continue to agree on appeal, "that the agency guidelines for PCQC employment reverification require that the reverification be obtained from the original source, i.e., the same source that provided the employment verification in the first instance," which would have required Clayton in this case to contact an employer directly instead of relying on third-party services. Special App'x at 20. But the agreement's provisions related to reverification services specifically contemplate reliance on third-party services. Thus, the section titled "Third Party Review Offerings" provides: "If requested by [Sun West], Clayton will order and review the following valuation and re-verification products from a Clayton Affiliate or third party vendor." Jt. App'x at 82. In addition, the section titled "Re-Verifications" contains an "Employment/Income Verification" subsection that states: "Clayton will order a third-party report that contains employment and income information for borrower(s) to validate reasonableness of income and verify employment." *Id.* at 83. The amendment to the SOW

further confirms the parties' understanding that third-party services will be used in the first instance before resorting to original verification of employment, because the relevant service description states "Verification of Employment (*If on line is unsuccessful*)." *Id.* at 90 (emphasis added).

These specific provisions related to reverification are inconsistent with Sun West's interpretation of the "Validity of Credit Underwriting" provision. This, alone, is a substantial reason to reject Sun West's argument. *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008) ("The rules of contract construction require us to adopt an interpretation which gives meaning to every provision of the contract[,]" and "specific language in a contract will prevail over general language where there is an inconsistency between two provisions.").

Because the terms of the agreement are unambiguous, Sun West's arguments regarding the expressions of the parties' intent before and after executing the agreement are unavailing. *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."); *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013) ("Parol evidence—evidence outside the four corners of the document—is admissible only if a court finds an ambiguity in the contract."). The integration clause also precludes Sun West's argument that we should honor an alleged subsequent modification of the agreement that was not reflected in a signed writing.

## II.     Performance of the Contract

The district court's factual findings that Clayton adequately performed its obligations under the contract are not clearly erroneous. The district court expressly found most of Sun West's evidence to the contrary not credible (the testimony of Sun West's primary witness, Sydney

6

Fernandez) or unreliable (certain spreadsheets purporting to track Clayton's PCQC review errors). These credibility judgments are firmly committed to the trier of fact. *See Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) ("[A]s trier of fact, the judge is entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness." (internal quotation marks and citations omitted)); *Cont'l Ins. Co. v. Lone Eagle Shipping Ltd. (Liberia)*, 134 F.3d 103, 104 (2d Cir. 1998) (per curiam) ("Assessments of the credibility of the witnesses and the weight to be given to particular pieces of evidence are peculiarly within the province of the trier of fact and are entitled to considerable deference.").

### III.   Affirmative Defenses

Next, the district court correctly found that Sun West did not meet its burden of proof with respect to its meeting of the minds and estoppel affirmative defenses. "Under New York contract law, the fundamental basis of a valid enforceable contract is a meeting of the minds of the parties. If there is no meeting of the minds on all essential terms, there is no contract." *Schurr v. Austin Galleries of Ill.,* 719 F.2d 571, 576 (2d Cir. 1983) (citations and internal quotation marks omitted). Because the written contract was unambiguous and the parties intended for it to reflect their entire agreement, Sun West's meeting of the minds defense fails. And contrary to Sun West's claim on appeal, this conclusion is not in tension with the district court's finding that Sun West disputed Clayton's invoices in good faith for the purpose of determining the applicable rate of prejudgment interest. The district court specified that it denied Clayton's request for the contractual prejudgment interest rate because Sun West disputed the invoices in good faith, even though "it may have been objectively unreasonable under the terms of the SOW for Sun West to require Clayton's compliance with agency guidelines for Re-verification Services or to withhold all payment even though Re-verification Services represented but a small part of the PCQC services."

7

Special App'x at 43; *see Ziparo v. CSX Transportation, Inc.*, 15 F.4th 153, 158–59 (2d Cir. 2021) (explaining that a good faith standard is a subjective one that "is unconcerned with whether the actor's belief or purpose meets an objective standard of reasonableness").

As to estoppel, "[t]he elements of estoppel are, with respect to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts.   The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *First Union Nat. Bank v. Tecklenburg*, 769 N.Y.S.2d 573, 574–75 (2003) (citation and internal quotation marks omitted).   The district court's factual determination that Sun West failed to meet its burden of proof on this defense because its argument "relie[d] largely on Mr. Fernandez's after-the-fact characterization of Sun West's expectations and Clayton's failure to meet them" is not clearly erroneous.   Special App'x at 28.

**IV.     Offer of Compromise Interest**

Finally, the district court appropriately awarded offer of compromise interest under Conn. Gen. Stat. ("CGS") § 52-192a(a).   "First, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court. . . . Second, after using state conflict-of-laws principles to ascertain the rules of decision that would apply in the state courts of the federal forum, federal courts apply those state rules of decision that are 'substantive' under *Erie,* and are consistent with federal law."   *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151–52 (2d Cir. 2013).   We determine whether a state rule of decision is substantive by examining "whether application of the [State's] rule would make so important a difference to the character or

result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court." *Id.* at 152 (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 n.8 (1996)).

"[A] state's 'procedural' rules under its own choice-of-law principles can be 'substantive' for purposes of *federal* diversity jurisdiction." *Liberty Synergistics*, 718 F.3d at 152. Connecticut state courts have held that CGS § 52-192a(a) is procedural for Connecticut state choice-of-law purposes and applies when New York law governs substantive contract law issues. *See Paine Webber Jackson & Curtis, Inc. v. Winters*, 22 Conn. App. 640, 649–51 (1990). In addition, CGS § 52-192a(a) is substantive for *Erie* purposes and therefore applies in federal court. *See Elgard Corp. v. Brennan Const. Co.*, 388 F.3d 30, 36–37 (2d Cir. 2004) (awarding offer of compromise interest under Connecticut law in a federal diversity case). Therefore, the district court did not err in awarding offer of compromise interest under CGS § 52-192a in addition to prejudgment interest under New York law.

\*      \*      \*

We have considered Sun West's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9